Jeffrey S. Jacobson (NJ ID No. 000772011)
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, New Jersey 07932-1047
Tel.: (973) 549-7000
Fax: (973) 360-9831
jeffrey.jacobson@faegredrinker.com

Crystal Nix-Hines (*pro hac vice*)
Shon Morgan (*pro hac vice*)
Marina E. Lev (*pro hac vice*)
Dylan Bonfigli (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Tel.: (213) 443-3000
crystalnixhines@quinnemanuel.com
shonmorgan@quinnemanuel.com
marinalev@quinnemanuel.com
dylanbonfigli@quinnemanuel.com

*Attorneys for Defendants Cellco Partnership*
*d/b/a Verizon Wireless* and
*Verizon Communications Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CINTIA CORSI, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, et al., <br><br><br> Defendants. | Case No. 3:22-cv-4621 ZNO <br><br><br> **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................4

ARGUMENT ...................................................................................................10

I.     PLAINTIFFS AGREED TO ARBITRATE THESE CLAIMS IN
       THEIR CONTRACTS WITH VERIZON....................................................12

II.    PLAINTIFFS DELEGATED TO THE ARBITRATOR ANY
       CHALLENGES TO THE VALIDITY OF THE ARBITRATION
       AGREEMENT............................................................................................17

III.   THE COURT CAN SEVER UNENFORCEABLE PROVISIONS .............22

IV.    THE COURT SHOULD RULE THAT ARBITRATION MAY NOT
       PROCEED ON A CLASS OR COLLECTIVE BASIS ................................23

V.     THE COURT SHOULD STAY FURTHER PROCEEDINGS ...................24

CONCLUSION ................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Achey v. Verizon, NO. MID-L-0160-22, Order*,
  at 2 (N.J. Sup., Middlesex Cty. Jul. 15, 2022) .......................................... 3, 18, 26

*Adell v. Cellco P'ship*,
  No. 21-3570, 2022 WL 1487765 (6th Cir. May 11, 2022) ................................17

*Arnold v. Homeaway, Inc.*,
  890 F.3d 546 (5th Cir. 2018).................................................................................21

*Asa v. Verizon Commc'ns, Inc.*,
  No. 1:17-cv-256, 2017 WL 5894543 (E.D. Tenn. Nov. 29, 2017)....................18

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015)..............................................................................22

*Carrone v. UnitedHealth Grp., Inc.*,
  No. 20-5138(FLW), 2020 WL 4530032 (D.N.J. Aug. 6, 2020) ........................21

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
  584 F.3d 513 (3d Cir. 2009)..................................................................................12

*Coiro v. Wachovia Bank, N.A.*,
  2012 WL 628514 (D.N.J. Feb. 27, 2012)........................................................ 15, 16

*Delta Funding Corp. v. Harris*,
  912 A.2d 104 (N.J. 2006)......................................................................................24

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ..........................................................................................28

*G.G. v. Valve Corp.*,
  799 F. App'x 557 (9th Cir. 2020)..........................................................................22

*Gannon v. Circuit City Stores, Inc.*,
  262 F.3d 677 (8th Cir. 2001)............................................................................ 25, 26

*Getz v. Verizon Commc'ns, Inc.*,
  No. 18-cv-4652, 2018 WL 5276426 (S.D.N.Y. Oct. 24, 2018)........................18

*Green Tree Fin. Corp. v. Bazzle*,
  539 U.S. 444 (2003) ..............................................................................................24

*Green v. Supershuttle, Int'l Inc.*,
  653 F.3d 766 (8th Cir. 2011).................................................................................21

*Hamilton-Warwick v. Verizon Wireless*,
  No. 16-3461, 2017 WL 1740462 (D. Minn. Apr. 12, 2017)..............................18

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ....................................................................................... 12, 13

*Hill v. Asset Acceptance, LLC*,
  No. 13-CV-1718, 2014 WL 1289578 (S.D. Cal. Mar. 27, 2014) ......................30

*In re Checking Acct. Overdraft Litig.*,
  856 F. App'x 238 (11th Cir. 2021)........................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
    938 F.3d 515 (3d Cir. 2019) ..................................................................16

*Intertec Contracting Turner Steiner Int'l, S.A.*,
    No. 98 Civ. 9116(CSH), 2001 WL 812224, (S.D.N.Y. July 18, 2001) ..............30

*Jaludi v. Citigroup*,
    933 F.3d 246 (3d Cir. 2019) ......................................................... 12, 14

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) .......................................................................28

*Lloyd v. HOVENSA, LLC.*,
    369 F.3d 263 (2004) ..........................................................................28

*MacClelland v. Cellco Partnership*,
    No. 21-cv-8592, 2022 WL 2390997 (N.D. Cal. July 1, 2022)....................... 3, 22

*Mahamedi IP L., LLP v. Paradice & Li, LLP*,
    No. 5:16-CV-02805-EJD, 2017 WL 2727874 (N.D. Cal. Feb. 14, 2017) ..........29

*Mitchell v. Verizon Wireless*,
    No. 05-C-511, 2006 WL 862879 (N.D. Ill. Mar. 31, 2006)..............................19

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983) ..................................................................... 1, 12, 26

*New Cmty. Corp. v. Arthur J. Gallagher Risk Mgmt. Servs. Inc.*,
    2011 WL 3586485 (D.N.J. Aug. 5, 2011)..................................................29

*Ohai v. Verizon Commc'ns, Inc.*,
    No. 05-729, 2005 WL 6563176 (D.N.J. Oct. 28, 2005)....................................18

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) .............................................................................13

*Richardson v. Coverall N. Am., Inc.*,
    811 F. App'x 100 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 1685 (2021) ..............4

*Spinetti v. Serv. Corp. Int'l*,
    324 F.3d 212 (3d Cir. 2003) ..................................................................25

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ..........................................................................27

*Verizon, James v. Glob. TelLink Corp*,
    852 F.3d 262 (3d Cir. 2017) ..................................................................14

**Statutory Authorities**

9 U.S.C. § 2 ...........................................................................................10

9 U.S.C. § 3 ...........................................................................................25

N.Y. Gen. Bus. Law § 349 ...........................................................................5

N.Y. Gen. Bus. Law § 350 ............................................................... 5, 6, 7, 8

**Additional Authorities**

*AAA Consumer Arbitration Rules* (eff. Sep. 1, 2014)................................... 3, 9, 18

Restatement (Second) Contracts § 72(1) .............................................................13

## **INTRODUCTION**

Plaintiffs in a putative six-state class action seek to circumvent individual arbitrations of their claims, contrary to the valid arbitration agreements to which they agreed when they became Verizon customers.  Specifically, each of the named consumer plaintiffs, like millions of other Verizon customers, agreed to abide by Verizon's arbitration clause by (i) accepting Verizon's Customer Agreement, which contains an express arbitration clause, and/or (ii) purchasing a cellular device from Verizon and agreeing to a Device Payment Agreement, which expressly incorporates the Customer Agreement's arbitration provision.[1]  This Court should thus enforce plaintiffs' contractual obligation to arbitrate, consistent with the "liberal federal policy favoring arbitration agreements" under the Federal Arbitration Act ("FAA").  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).

Plaintiffs cannot plausibly contest that Verizon's agreements require arbitration.  First, the arbitration clause in the Customer Agreement states in bold, capitalized letters:  "**YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION ….  YOU UNDERSTAND THAT … YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT**."

---

[1]  The sole named plaintiff who is a business customer accepted Verizon's Major Account Agreement, which also contains an agreement to arbitrate.  *See* Declaration of Lacy Kennedy ("Kennedy Dec."), Ex. 3 ¶ 25.

Kennedy Dec. Ex. 1 at CA-P.6.  This provision further provides that "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT, OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US, OR FROM ANY ADVERTISING FOR SUCH PRODUCTS OR SERVICES, … WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS." *Id.*  Additionally, the provision states that it "**DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS**." *Id.* Second, the Device Payment Agreement provides, "ANY DISPUTE UNDER THIS DEVICE PAYMENT AGREEMENT … SHALL BE RESOLVED IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROVISIONS IN YOUR CUSTOMER AGREEMENT, … WHICH TERMS ARE INCORPORATED HEREIN BY REFERENCE." *Id.*, Ex. 2 ¶ 1.[2]  In short, the plain language in the agreements shows that plaintiffs unambiguously agreed to arbitrate their claims regarding Verizon's administrative fee on an individual basis.

Plaintiffs cannot plausibly dispute that their agreements with Verizon require arbitration.  But if past is prologue, plaintiffs' counsel—who are pursuing the same claim against Verizon in New Jersey state court, *see Achey v. Verizon*, NO. MID-L-0160-22, Order at 2 (N.J. Sup., Middlesex Cty. Jul. 15, 2022) (Declaration of

---

[2]  The Major Account Agreement states, "We both agree to arbitrate any dispute that arises under or relates to this Agreement."  Kennedy Dec. Ex. 3 ¶ 25.

Crystal Nix-Hines ["Nix-Hines Dec."], Ex. 1)—will argue here, as they did

unsuccessfully there, that the arbitration agreement and the Customer Agreement

contain unenforceable provisions.[3]  But that argument raises questions of

arbitrability and thus is not properly before this Court because the parties

specifically agreed to delegate questions of arbitrability to the arbitrator by

incorporating the AAA Consumer Arbitration Rules (the "AAA Rules") into the

Customer Agreement.  Those AAA Rules provide that "[t]he arbitrator shall have

the power to rule on his or her own jurisdiction, including any objections with

respect to the … validity of the arbitration agreement."  R-14(a), AAA Consumer

Arbitration Rules (eff. Sep. 1, 2014) (Nix-Hines Dec. Ex. 3).  The Third Circuit

has held that incorporating this rule "constitutes clear and unmistakable evidence

that the parties agreed to delegate arbitrability," even when the agreement involves

unsophisticated parties.  *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100,

---

[3]  Plaintiffs' counsel has filed two other putative class actions against Verizon:
*Achey v. Verizon*, NO. MID-L-0160-22 (N.J. Sup., Middlesex Cty. Jul. 15, 2022),
and *MacClelland v. Cellco Partnership*, No. 21-CV-08592-EMC, 2022 WL
2390997 (N.D. Cal. July 1, 2022).  In *Achey*, the New Jersey state court compelled
arbitration after severing a provision deemed unconscionable under New Jersey
law relating to damages.  *See Achey*, NO. MID-L-0160-22, Order at 2 (N.J. Sup.,
Middlesex Cty. Jul. 15, 2022) (Nix-Hines Dec. Ex. A).  In *MacClelland*, the court
deemed the arbitration agreement unenforceable, concluding, in part, that
incorporation of the AAA rules did not demonstrate the parties' intent to delegate
arbitrability issues to an arbitrator when one party to the agreement is
unsophisticated.  2022 WL 2390997, at *3-4.  Verizon has appealed the
*MacClelland* order based on this and other legal errors.

103-04 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 1685 (2021).  Thus, the only forum in which plaintiffs may challenge the "validity of the arbitration agreement" is the arbitral forum, not this Court.  *See id.*

Because plaintiffs have no basis to avoid their valid, binding agreements to arbitrate their claims, the Court should grant Verizon's motion to compel and stay this case pending arbitration under Section 3 of the FAA.

## BACKGROUND

***Plaintiffs' Allegations.***  All but one of the plaintiffs are Verizon consumer customers.  *See* Kennedy Dec. ¶ 28.  The remaining named plaintiff (Ritsuko Tsunahima-Kukonu) entered into a Verizon agreement on behalf of a business.  *Id.* ¶ 4.  All 26 plaintiffs allege that Verizon's billing statements purportedly misrepresent the purpose of a $3.30 administrative charge that helps defray expenses Verizon incurs.  *See, e.g.*, Am. Compl. ¶¶ 2, 14-39.  Plaintiffs also allege that Verizon's advertisements do not adequately disclose this administrative charge.  *See, e.g.*, *id.* ¶¶ 45-48.

Contrary to plaintiffs' assertions, Verizon has fully and fairly disclosed the administrative charge.  The Customer Agreement includes a section titled "What charges are set by Verizon?"  Kennedy Dec. Ex. 1 at CA-P.3.  That section states:

> Our charges may also include Federal Universal Service, Regulatory ***and Administrative Charges***, and we may also include other charges related to our governmental costs. We set these charges; but they aren't taxes, they aren't

> required by law, they are not necessarily related to anything the government does, they are kept by us in whole or in part, and the amounts and what they pay for may change.    For more information, visit verizon.com/support/surcharges.

*Id.* (emphasis added).

Customers' bills also contained a "Notice of Changes to Administrative Charge," which states:

> Effective June 23, 2022, the monthly Verizon Wireless Administrative and Telco Recovery Charge (formerly the Verizon Wireless Administrative Charge) for voice-capable devices will increase from $1.95 to $3.30 per line. The charge for data-only devices will remain $0.06.  The increased charge and updated name will appear on your next bill.  For further information regarding the "Admin & Telco Recovery Charge," review the "Explanation of Surcharges" section of the bill.

Kennedy Dec. Ex. 36 at 18.  The "Explanation of Surcharges" section explains that the Administrative Charge "helps defray certain expenses [Verizon] incur[s], including charges [Verizon], or [its] agents, pay local telephone companies for delivering calls from [Verizon] customers to their customers, fees and assessment on [Verizon's] network facilities and services, property taxes, and the costs [Verizon] incurs responding to regulatory orders."  *Id.*

Notwithstanding these disclosures, plaintiffs assert claims for: (1) unjust enrichment, *id.* ¶¶ 128-35, (2) breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 136-47, (3) violation of New York General Business Law § 349, ¶¶ 127-134, (4) violation of New York General Business Law § 350, *id.* ¶¶ 148-55, (5) violation of Washington Consumer Protection Act (RCW Chapter 19.86), *id.*

¶¶ 162-79, (6) violation of the Oregon Unlawful Trade Practices Act (ORS § 646.605 et seq.), *id.* ¶¶ 180-202, (7) violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§ 57-12-1, et seq.), *id.* ¶¶ 203-12, (8) violation of the New Mexico False Advertising Act (N.M. Stat. Ann. §§ 57-15-1, et seq.), *id.* ¶¶ 213-18, (9) violation of Hawaii Deceptive Practices Act (Haw. Rev. Stat. Ann. §§ 480-1, et seq.), *id.* ¶¶ 219-32, and (10) violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201, et seq.), *id.* ¶¶ 233-41. Plaintiffs purport to bring these claims on behalf of classes of similarly situated individuals in "New York, Washington, Oregon, New Mexico, Hawaii, and Florida." *Id.* ¶ 1.

Plaintiffs seek, among other relief: to "enjoin [Verizon] from engaging" in the conduct alleged in the complaint, *id.* at 63 ¶ D, "disgorgement of all revenues, profits and/or unjust enrichment that Verizon obtained, directly or indirectly, from Plaintiffs," *id.* at 63 ¶ G, "damages suffered as a result of the conduct alleged" in the complaint, *id.* at 64 ¶ J, "punitive, exemplary, treble, and/or statutory damages," *id.* at 64 ¶ K, and "attorneys' fees and costs to the extent allowed by law," *id.* at 64 ¶ L. Plaintiffs assert that the amount in controversy exceeds $5 million. *Id.* ¶ 43.

***The Consumer Plaintiffs' Arbitration Agreements with Verizon.*** The consumer Plaintiffs accepted the Customer Agreement before activating wireless service. Kennedy Dec. ¶¶ 3, 5. Before finalizing any transaction with Verizon, the

consumer plaintiffs were required to agree to the Customer Agreement, including "settlement of dispute by arbitration instead of jury." *Id.* ¶ 5.  For example, plaintiffs who initiated a transaction online or telephonically agreed to the Customer Agreement by receiving a link to the agreement's terms and conditions, confirming their review of the terms and conditions, and electronically signing the agreement. *Id.*  Alternatively, plaintiffs who completed a transaction in person were required to check a box that appeared immediately after their payment confirmation to indicate that they had read and agreed to the Customer Agreement. *Id.*  Those plaintiffs were also required to sign in a separate field that stated: "**By signing, I agree to the above**." *Id.*

Among the terms of the Customer Agreement to which the consumer plaintiffs agreed is an arbitration agreement. *Id.* ¶ 7.  As the hyperlink demonstrates, the arbitration agreement is offset prominently in a separate box of text with a different background color from the rest of the Customer Agreement. *Id.* ¶ 8.  Moreover, each time plaintiffs conducted a transaction with Verizon, they reaffirmed their agreement to arbitrate disputes with Verizon through a materially similar arbitration agreement, which is part of the Customer Agreement all customers must sign to engage in transactions with Verizon. *Id.* ¶ 25.

Verizon customers also often enter into a Device Payment Agreement when they purchase a cellular device from Verizon, which allows them to pay for a

device for use on their Verizon account in installments, rather than paying the entire cost of the device at once.  *Id.* ¶ 6.  The Device Payment Agreements contain a provision that incorporates the arbitration clause from the Customer Agreement: "ALTHOUGH YOUR CUSTOMER AGREEMENT IS A SEPARATE DOCUMENT … ANY DISPUTE UNDER THIS DEVICE PAYMENT AGREEMENT SHALL BE RESOLVED IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROVISIONS IN YOUR CUSTOMER AGREEMENT, … ***WHICH TERMS ARE INCORPORATED HEREIN BY REFERENCE***."  *Id.*, Ex. 2 ¶ 1 (emphasis added).

The arbitration clause in the Customer Agreement begins with a prominent heading in capitalized, bolded font.  It is titled "HOW DO I RESOLVE DISPUTES WITH VERIZON?" and explains in simple terms the arbitration process and how it differs from a trial in court:

> **YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT…. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY.**

*Id.*, Ex. 1 at CA-P.6.  The arbitration clause also provides that "THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT."  *Id.*

The arbitration clause broadly covers "Disputes" between Verizon and its customers and defines "Disputes" expansively, stating:

> EXCEPT FOR SMALL CLAIMS COURT CASES, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT THIS AGREEMENT, OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US, OR FROM ANY ADVERTISING FOR SUCH PRODUCTS OR SERVICES, … INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS ….

*Id.*

The arbitration clause creates a two-tier framework under which: (1) AAA or BBB rules apply to "claims of $10,000 or less" (unless the claimant elects to proceed in small claims court), and (2) AAA rules apply to "claims over $10,000." *Id.* (citation omitted).  The AAA Rules, which apply to the claims here, *see infra* Part II, provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the … validity of the arbitration agreement," R-14(a), AAA Consumer Arbitration Rules (eff. Sep. 1, 2014).

The Customer Agreement also contains two "severability" clauses.  The first provides: "**If any part of this agreement, including anything regarding the arbitration process (except for the prohibition on class arbitrations as explained in part 8 of the dispute resolution section above), is ruled invalid, that part may be removed from this agreement**."  Kennedy Dec. Ex. 1 at CA-P.8.  The second clause specifically relates to the arbitration agreement and states, "IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATION

9

SET FORTH IN SUBSECTION (3) CANNOT BE ENFORCED AS TO ALL OR

PART OF A DISPUTE, THEN THE AGREEMENT TO ARBITRATE WILL

NOT APPLY TO THAT DISPUTE OR PART OF THE DISPUTE." *Id.* at CA-

P.7.

 ***Verizon's Major Account Agreement.*** Plaintiff Ritsuko Tsunashima-

Kukonu, on behalf of R and R Global Services, entered into a Verizon Wireless

Retail Major Account Agreement, rather than a Customer Agreement. Kennedy

Dec. ¶ 4. The Major Account Agreement also contains an agreement to arbitrate.

*Id.*, Ex. 3 ¶ 25. It states that the parties "agree to arbitrate any dispute that arises

under or relates to [the Major Account Agreement]." *Id.* The arbitration

agreement also states that "any arbitration shall be held before an independent

arbitrator, governed and administered by the American Arbitration Association."

*Id.* And "no arbitration can be on a class basis or be joined or consolidated with

another arbitration." *Id.*

## ARGUMENT

 The FAA governs enforcement of arbitration agreements. Section 2 of the

FAA provides that an arbitration agreement "shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract." 9 U.S.C. § 2. "Section 2 is a congressional declaration of a

liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

"Deciding whether arbitration is required is a two-step process: in the first step, the court determines whether 'there is an agreement to arbitrate,' and then in the second step, the court decides whether 'the dispute at issue falls within the scope of that agreement.'" *Jaludi v. Citigroup*, 933 F.3d 246, 254 (3d Cir. 2019) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009)); *accord Richardson*, 811 F. App'x at 103.

"[P]arties are free to assign the resolution of these [gateway] issues to an arbitrator." *Richardson*, 811 F. App'x at 103. Although there is a presumption that courts decide "gateway" issues of arbitrability, that presumption is overcome when the parties "clear[ly] and unmistakab[ly]" agree otherwise. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). "[W]hen the parties' [do so], a court may not override the contract"—the "court possesses no power to decide the arbitrability issue." *Id.* at 529.

"An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010). The

"gateway" issues that parties can agree to arbitrate include whether an arbitration agreement is unconscionable.  *Id.* at 68.

## I.   PLAINTIFFS AGREED TO ARBITRATE THESE CLAIMS IN THEIR CONTRACTS WITH VERIZON

*First*, there can be no serious dispute that plaintiffs assented to an arbitration agreement, and plaintiffs' counsel has not argued otherwise in their similar lawsuits.  *See, e.g.*, *MacClelland v. Cellco P'ship*, No. 21-CV-08592-EMC, Pls.' Opp. Defs.' Mot. Compl Arb., ECF No. 29 at 7 (N.D. Cal. July 1, 2022) (plaintiffs' counsel conceding that "each Plaintiff's relationship with Verizon is governed by the … Customer Agreement").  As set forth in the concurrently filed declaration of Lacy Kennedy, each plaintiff agreed to arbitration through the Customer Agreement, the Device Payment Agreement (which incorporates the terms of the Customer Agreement), or the Major Account Agreement.  *See* Kennedy Dec. ¶¶ 3-16.  For example, the consumer plaintiffs, before finalizing their transactions with Verizon, agreed to arbitrate by electronically signing the agreement or checking a box indicating they had "read and agree[d] to the Verizon Wireless Customer Agreement …, ***including settlement of dispute by arbitration instead of jury trial***."  *Id.* ¶ 5 (emphasis added).  Others agreed to arbitration by entering into (1) the Device Payment Agreement when purchasing a cellular device or (2) the Major Account Agreement if a business customer.  *Id.* ¶¶ 3, 16.  Verizon has thus established "there is an agreement to arbitrate,'" *Jaludi*, 933 F.3d at 254 (citation

omitted), because plaintiffs "expressly manifest[ed] assent" to arbitrate their disputes with Verizon, *James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017).

Additionally, plaintiffs repeatedly re-affirmed their agreement to arbitrate. Specifically, the Customer Agreement states:  "We may change prices or any other term of your Service or this Agreement at any time, but we'll provide notice first, including written notice if you have Postpay Service.  If you use you Service after the change takes effect, that means you're accepting the change."  Kennedy Dec. Ex. 1 at CA-P.2.  From time to time, Verizon has updated its Customer Agreement and provided appropriate notice to plaintiffs before doing so.  Kennedy Dec. ¶ 27. For example, in November 2021, Verizon notified its customers that it had clarified certain provisions in the section titled "HOW DO I RESOLVE DISPUTES WITH VERIZON?"  *Id.*  Plaintiffs here continued to use Verizon's services after receiving this notice and thus further manifested their assent to the Customer Agreement and its arbitration clause.  *See, e.g.*, Restatement (Second) Contracts § 72(1) (silence operates as acceptance where "the offeror has stated or given the offeree reason to understand that assent may be manifested by silence or inaction, and the offeree in remaining silent and inactive intends to accept the offer" or "because of previous dealings or otherwise, the offeree has given the offeror reason to understand that the silence or inaction is intended by the offeree

as a manifestation of assent, and the offeror does so understand"); *Coiro v. Wachovia Bank, N.A.*, 2012 WL 628514, at *3 (D.N.J. Feb. 27, 2012) (plaintiff bound by arbitration clause in modified agreement when the initial agreement stated that defendants could modify the agreement so long as plaintiff had thirty days' notice within which to close her account).

    *Second*, the arbitration agreements undoubtedly apply to plaintiffs' claims. The arbitration clause in the Customer Agreement provides:  "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT THIS AGREEMENT, OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US, OR FROM ANY ADVERTISING FOR SUCH PRODUCTS OR SERVICES, … WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS …." *Id.*, Ex. 1 at CA-P.6.  And the arbitration clause in the Major Account Agreement similarly states that the parties "agree to arbitrate any dispute that arises under or relates to [the agreement]." *Id.*, Ex. 3 ¶ 25.  An arbitration agreement like these ones that uses "the terms 'arising out of' [and] 'relating to'" is "indicative of an extremely broad agreement to arbitrate any dispute relating in any way to the contract." *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 523 (3d Cir. 2019).

    Here, plaintiffs allege that "Verizon falsely advertises its wireless services at lower monthly rates than it actually charges customers by not disclosing, and not

including in the advertised price, a so-called 'Administrative Charge.'" Am. Compl. ¶ 45. Plaintiffs contend "[t]he Administrative Charge is not disclosed to customers either before or when they agree to purchase wireless services from Verizon, and in fact the Administrative Charter is never adequately or honestly disclosed to customers." *Id.* ¶ 46. And plaintiffs allege that "Verizon makes affirmative misrepresentations on its bills that the Administrative Charge is to recover the costs billed to Verizon by the government." *Id.* ¶ 47.

Plaintiffs' claims plainly arise from and relate to their agreements with Verizon, the "PRODUCTS AND SERVICES [PLAINTIFFS] RECEIVE FROM [VERIZON]," and the "ADVERTISING FOR SUCH PRODUCTS OR SERVICES." Kennedy Dec. Ex. 1 at CA-P.6. For example, plaintiffs allege that the administrative charge "frustrate[s] the basic terms of the parties' agreement." Am. Compl. ¶ 143. Plaintiffs also repeatedly take issue with Verizon's "advertising" of consumer wireless service plans. *See, e.g.*, *id.* ¶¶ 45-67. Thus, this dispute indisputably falls within the scope of their arbitration agreements. Indeed, the Sixth Circuit recently affirmed an order compelling a plaintiff to arbitrate claims challenging Verizon's administrative charge based on the Customer Agreement's arbitration clause. *See Adell v. Cellco P'ship*, No. 21-3570, 2022 WL 1487765, at *1-2 (6th Cir. May 11, 2022) (noting "no[] dispute"

that the arbitration clause "covers [plaintiff's] breach of contract claim," which was "based on Verizon's imposition of the administrative charge").

Moreover, multiple courts have compelled to arbitration claims similar to plaintiffs' claims here based on the Customer Agreement. *See, e.g.*, *Achey*, NO. MID-L-0160-22, Order at 2 (July 15, 2022) (Nix-Hines Dec. Ex. 1) ("[T]his case is stayed as against Verizon, and Plaintiff shall submit its claims against Verizon to arbitration in accordance with the arbitration agreement."); *Ohai v. Verizon Commc'ns, Inc.*, No. 05-729, 2005 WL 6563176, at *9 (D.N.J. Oct. 28, 2005) (granting Verizon Wireless' motion to compel arbitration and rejecting procedural and substantive unconscionability challenges); *Getz v. Verizon Commc'ns, Inc.*, No. 18-cv-4652, 2018 WL 5276426, at *2 (S.D.N.Y. Oct. 24, 2018) (compelling arbitration of claim relating to allegedly unauthorized text messages); *Asa v. Verizon Commc'ns, Inc.*, No. 1:17-cv-256, 2017 WL 5894543 (E.D. Tenn. Nov. 29, 2017) (court could "easily conclude" that plaintiff's claims involving lack of access to his online account "arise from the 'equipment, products and services' he received," and were thus subject to arbitration); *Hamilton-Warwick v. Verizon Wireless*, No. 16-3461, 2017 WL 1740462 (D. Minn. Apr. 12, 2017), *report and recommendation adopted*, No. 16-3461, 2017 WL 1743518 (D. Minn. May 3, 2017) (compelling arbitration of Verizon customer's claims for overbilling and improper fees); *Mitchell v. Verizon Wireless*, No. 05-C-511, 2006 WL 862879, at

*2-4 (N.D. Ill. Mar. 31, 2006) (granting Verizon Wireless's motion to compel arbitration and further finding the agreement was neither obtained by fraud nor substantively unconscionable).  This Court should do the same.

## II. PLAINTIFFS DELEGATED TO THE ARBITRATOR ANY CHALLENGES TO THE VALIDITY OF THE ARBITRATION AGREEMENT

Plaintiffs will likely contend the arbitration agreements are unconscionable and thus unenforceable, but it is not appropriate for this Court to consider that argument because plaintiffs have agreed to arbitrate that "gateway" issue.  The Customer Agreement's arbitration clause creates a two-tier framework under which:  (1) AAA or BBB rules apply to "CLAIMS OF $10,000 OR LESS" (unless the claimant elects to proceed in small claims court), and (2) AAA rules apply to "CLAIMS OVER $10,000."  Kennedy Dec. Ex. 1 at CA-P.6. (citation omitted). Factoring in the relief plaintiffs seek here—including punitive damages, statutory damages,[4] attorneys' fees, and injunctive relief—plaintiffs allegations can be construed as asserting "CLAIMS OVER $10,000."  *Id.*[5]  Thus, the AAA Rules

---

[4]  The plaintiffs who seek to represent the "New York Class" assert that they are entitled to recover "damages or $500 per person (whichever is greater)" and that they "are also entitled to treble damages up to $10,000."  Am. Compl. ¶ 161.

[5]  While Verizon does not agree that the claims actually have such value, plaintiffs' requests for relief allege this amount in controversy.  Even if plaintiffs' claims fell below the $10,000 threshold, customers may choose between the AAA and BBB, and by electing his or her preferred forum, the claimant knows which rules apply to his or her claims.  *Id.*

apply, and those rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the … validity of the arbitration agreement."  R-14(a), AAA Consumer Arbitration Rules (eff. Sep. 1, 2014) (Nix-Hines Dec. Ex. 3).  That plaintiffs' counsel has noticed thousands of individual claims with the AAA challenging Verizon's administrative fee—and none with the BBB—further confirms the plaintiffs' understanding that the AAA Rules apply here.  Thus, the AAA is the appropriate forum to resolve gateway issues of arbitrability.  Indeed, plaintiffs' counsel even filed arbitration demands with the AAA on behalf of many of the named plaintiffs in this case, only to withdraw those demands upon filing the complaint here.

Consistent with every other circuit to have considered the issue, the Third Circuit has held that incorporating AAA Rules "constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability," even when the rules are incorporated by reference into a consumer contract.  *Richardson*, 811 F. App'x at 103-04; *see also Carrone v. UnitedHealth Grp., Inc.*, No. 20-5138 (FLW), 2020 WL 4530032, at *3 (D.N.J. Aug. 6, 2020) (AAA Rules "need not be appended to the arbitration agreement" for their incorporation by reference to be binding); *In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 244 (11th Cir. 2021) ("[W]e have never distinguished between agreements involving sophisticated and unsophisticated parties, and those involving only sophisticated parties; in fact, our

precedent includes cases about agreements involving unsophisticated parties.");

*Arnold v. Homeaway, Inc.*, 890 F.3d 546, 552 & n.5 (5th Cir. 2018) (rejecting

argument that the rule regarding incorporation of AAA rules did not apply to a

"consumer contract of adhesion," and noting that "no circuit court has adopted"

that argument); *Green v. Supershuttle, Int'l Inc.*, 653 F.3d 766, 767-69 (8th Cir.

2011) (similar); *G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020) ("The

parties' degree of sophistication does not change th[e] conclusion" that "teenagers

clearly and unmistakably agreed to arbitrate questions of arbitrability because the

arbitration agreement incorporate[d] AAA rules.").  Thus, if plaintiffs challenge

the "validity of the arbitration agreement," their challenges must be resolved in

arbitration.  *See, e.g.*, *Richardson*, 811 F. App'x at 103-04.

No Third Circuit case is to the contrary.  Plaintiffs will likely rely on

*MacClelland v. Cellco Partnership*, No. 21-cv-8592, 2022 WL 2390997, at *3

(N.D. Cal. July 1, 2022), which ruled that the Verizon Customer Agreement's

incorporation of the AAA Rules did not delegate questions of arbitrability because

it is a consumer contract.  But the Ninth Circuit itself has rejected that reasoning,

holding that "teenagers clearly and unmistakably agreed to arbitrate questions of

arbitrability because the arbitration agreement incorporates AAA rules,"

notwithstanding "[t]he parties' degree of sophistication."  *Valve Corp.*, 799 F.

App'x at 558; *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir.

2015) ("Our holding today should not be interpreted to require that the contracting parties be sophisticated ... before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent [to delegate arbitrability].").  Verizon has therefore appealed the ruling in *MacClelland* based on this and other legal errors.  In any event, *MacClelland* cannot serve as persuasive authority in this Court because its reasoning is foreclosed by the Third Circuit's decision in *Richardson*.  811 F. App'x at 103-04.  Thus, it would be improper for this Court to adopt the flawed reasoning in *MacClelland* as its own.

    *MacClelland* also incorrectly took issue with a provision in Verizon's Customer Agreement providing for a bellwether process in response to the filing of mass arbitrations.  2022 WL 2390997, at *12-13.  The bellwether provision states, "IF 25 OR MORE CUSTOMERS INITIATE NOTICES OF DISPUTE WITH VERIZON WIRELESS RAISING SIMILAR CLAIMS, AND COUNSEL FOR THE VERIZON WIRELESS CUSTOMERS BRINGING THE CLAIMS ARE THE SAME OR COORDINATED FOR THESE CUSTOMERS, THE CLAIMS SHALL PROCEED IN ARBITRATION IN A COORDINATED PROCEEDING."  Kennedy Dec. Ex. 1 at CA-P.7.  And "COUNSEL FOR THE VERIZON WIRELESS CUSTOMERS AND COUNSEL FOR VERIZON WIRELESS

SHALL EACH SELECT FIVE CASES TO PROCEED FIRST IN ARBITRATION IN A BELLWETHER PROCEEDING." *Id.*

Plaintiffs' counsel argued, and the court in *MacClelland* agreed, that if some claimants cannot immediately initiate arbitration, their claims may be time barred, while the bellwether cases proceed.  2022 WL 2390997, at *12-13.  But nothing in the bellwether provision suggests that a statute of limitations would preclude a customer who has initiated a dispute with Verizon from pursuing his or her claims due to participation in the bellwether process.

Moreover, "under federal arbitration law, it is ordinarily the role of the arbitrator, not the courts to interpret ambiguous provisions of an arbitration agreement." *Delta Funding Corp. v. Harris*, 912 A.2d 104, 110 (N.J. 2006) (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451-53 (2003)).  Thus, it would be for the arbitrator, not this Court, to interpret the bellwether provision in the first instance.  In any event, Verizon revised its Customer Agreement in August 2022 to confirm and make clear that any statute of limitation is tolled once a claimant serves a notice of dispute, and Verizon agrees to extend that tolling to the plaintiffs here.  Kennedy Dec. ¶ 22.  Thus, no credible concern exists that a customer's participation in bellwether proceedings would create timeliness issues.  And plaintiffs' counsel's previous contention that it would take over a hundred years to resolve all of the plaintiffs' claims is purely speculative and clearly unfounded

here, because there are only 26 named plaintiffs whose claims could be resolved expeditiously.  What is certain is that plaintiffs' counsel here are attempting to use a mass-arbitration process to force Verizon to pay significant arbitration fees in order to force a global settlement of a dubious claim before a single arbitrator has considered the claim's merits.  Verizon's arbitration clause instituting a bellwether process is a reasonable response to this transparent litigation tactic to bring order, efficiency, and business certainty to addressing customer claims.

## III.   THE COURT CAN SEVER UNENFORCEABLE PROVISIONS

Even if the Court were to entertain plaintiffs' challenges to the validity of the arbitration agreements, the agreements do not contain unconscionable provisions, and in any event, certain provisions deemed unenforceable can be severed.  Severance is appropriate when a challenged provision is not "an essential part of the agreed exchange."  *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 214 (3d Cir. 2003).  That is the case when, as here, "[t]he essence of the [disputed] contract … is an agreement to settle … disputes through binding arbitration."  *Id.* (quoting *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 681 (8th Cir. 2001)).

Severance would give effect to the parties' "agreement to settle … disputes through binding arbitration," *id.*, the parties' stated intent that any provision that is "ruled invalid … may be removed from th[e] agreement," Kennedy Dec. Ex. 1 at CA-P.8, and the broad federal policy that "any doubts concerning the scope of

arbitrable issues, including contract defenses, should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25.  Indeed, a court in this state adopted that approach by severing from the arbitration agreement a provision that limited damages (as unconscionable under New Jersey state law), and then compelling the plaintiffs' claims to arbitration.  *Achey*, NO. MID-L-0160-22, Order at 2 (July 15, 2022) (Nix-Hines Dec. Ex. 1) ("[T]his case is stayed as against Verizon, and Plaintiff shall submit its claims against Verizon to arbitration in accordance with the arbitration agreement.").  Notably, that case involved the same counsel representing plaintiffs here and involved the same challenges to Verizon's administrative charge.

## IV.   THE COURT SHOULD RULE THAT ARBITRATION MAY NOT PROCEED ON A CLASS OR COLLECTIVE BASIS

The Supreme Court has held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).  Here, the arbitration clause in the Customer Agreement reflects the parties' express intent to preclude class arbitrations:

> **THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATION….NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF**

**WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM.  NO CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL OR GENERAL INJUNCTIVE RELIEF THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION.**

Kennedy Dec. Ex. 1 at CA-P.6.  It also provides that "**ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR**." *Id.*  Similarly, the arbitration clause in the Major Account Agreement states that "no arbitration can be on a class basis or be joined or consolidated with another arbitration." *Id.*, Ex. 3 ¶ 25.

The Supreme Court has consistently enforced similar class waivers in arbitration agreements.  *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) ("[C]ourts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent."); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019) ("Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis").  Accordingly, this Court should follow these precedents here and order that any arbitrations must proceed on an individual basis.

## V.    THE COURT SHOULD STAY FURTHER PROCEEDINGS

Section 3 of the FAA "clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the

litigation until arbitration has been concluded." *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (2004) (quoting 9 U.S.C. § 3). As *Lloyd* explains, "The effect of the stay is twofold: it relieves the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party to proceed immediately to arbitration without the delay that would be occasioned by an appeal of the District Court's order to arbitrate that issue." *Id.* at 270. Indeed, "The legislative scheme of the FAA … reflects a policy decision that, if a district court determines that arbitration of a claim is called for, the judicial system's interference with the arbitral process should end unless and until there is a final award." *Id.* Thus, because plaintiffs must pursue their claims in arbitration, this Court must stay all further proceedings pending arbitration. *See id.*

Additionally, this Court should stay proceedings pending a ruling on Verizon's motion to compel arbitration. *See, e.g.*, *New Cmty. Corp. v. Arthur J. Gallagher Risk Mgmt. Servs. Inc.*, 2011 WL 3586485, at *2 (D.N.J. Aug. 5, 2011) (staying case pending decision on motion to compel arbitration). Courts routinely grant this interim relief because "[i]f the Court ultimately determines that the dispute should be arbitrated, 'responsibility for the conduct of discovery," along with all other matters, "lies with the arbitrators." *Mahamedi IP L., LLP v. Paradice & Li, LLP*, No. 5:16-CV-02805-EJD, 2017 WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) (collecting cases) (quoting *Stiener v. Apple Comput., Inc.*, No.

C 07-4486 SBA, 2007 WL 4219388, at *1 (N.D. Cal. Nov. 29, 2007)); *see, e.g.*,

*Hill v. Asset Acceptance, LLC*, No. 13-CV-1718, 2014 WL 1289578, at *2 (S.D.

Cal. Mar. 27, 2014) ("in light of the pending motion to compel arbitration, the

Court finds it appropriate to STAY discovery"); *Intertec Contracting Turner*

*Steiner Int'l, S.A.*, No. 98 Civ. 9116(CSH), 2001 WL 812224, at *7 (S.D.N.Y. July

18, 2001) ("As is the general practice of district courts, a stay of discovery was

imposed in this case while the motion to compel arbitration was pending before the

Court.").  Here, plaintiffs will suffer no prejudice from a temporary stay pending a

ruling on this motion.  *Id.* (finding no prejudice and issuing interim stay).

## <u>CONCLUSION</u>

The Court should grant Verizon's motion and compel plaintiffs to submit

their claims, on an individual basis, to binding AAA arbitration, along with any

challenges to the validity of the parties' arbitration agreements.

DATED this 18th day of November, 2022      FAEGRE DRINKER BIDDLE &
                                           REATH LLP


                                  By_____/s/ Jeffrey S. Jacobsen_____

                                       Jeffrey S. Jacobsen
                                       *Attorneys for Defendants VERIZON*
                                       *WIRELESS and VERIZON*
                                       *COMMUNICATIONS, INC.*

DATED this 18th day of November, 2022   QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP


                                          By _____ */s/ Crystal Nix-Hines* _____

                                          Crystal Nix-Hines
                                          *Attorneys for Defendants VERIZON*
                                          *WIRELESS and VERIZON*
                                          *COMMUNICATIONS, INC.*