**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Stephen P. DeNittis, Esq. (SD-0016)**
**Joseph A. Osefchen, Esq.**
**120Shane T. Prince, Esq.**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**

**CRIDEN & LOVE, P.A.**
**Michael E. Criden, Esq.\*\***
**Lindsey C. Grossman, Esq.\*\***
**7301 SW 57ᵗʰ Court, Suite 515**
**South Miami, FL 33143**
**(305) 357-9000**

**Attorneys for Plaintiffs and the Proposed Classes**

**HATTIS & LUKACS**
**Daniel M. Hattis, Esq.\***
**11711 SE 8ᵗʰ Street, Suite**
**Bellevue, WA 98005**
**(425) 233-8650**

**\* Admitted Pro Hac Vice**
**\*\* Pro Hac Vice Application**
**   To Be Submitted**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY BOWMAN; ART CAPRI; DEBRA CASEY; KARYN CHALLENDER; TYSON COHRON; CINTIA CORSI; ANDI ELLIS; LAURIE FRANTZ; ASHLEY GARRISON; ANGELA GREEN; CARLOS GUTIERREZ; JAMES HOLLING; KAREN HUDSON; JERRY HUNT; JENNIFER HURTT; JOYCE JONES; LYNN KIRALY; MICHELLE LACUESTA; JASON MCCONVILLE; JOSE NICOT; SANDRA OSHIRO; LESLIE OWENS; JON SANTOS; TERRY SEXTON; RITSUKO TSUNASHIMA-KUKONU; and KATHLEEN WRIGHT; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS and VERIZON COMMUNICATIONS INC.,<br><br>Defendants. | CIVIL ACTION NO. 3:22-cv-04621<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES……………………………………………………iii-v

Summary of the Action…………………………………………………………..1

Summary of Argument…………………………………………………………..1

I.    VERIZON HAS NOT COME CLOSE TO MEETING ITS
      ONEROUS BURDEN OF OVERCOMING THE FEDERAL
      PREUMPTION IN FAVOR OF THE COURT DECIDING
      ALL ISSUES OF ABITRATBILITY………………………………………..6

II.   VERIZON'S ARBITRATION CLAUSE IS SO PERMEATED
      BY UNCONSCIONABLE PROVISIONS THAT IT DEPRIVES
      CONSUMERS OF ANY OPPORTUNITY TO LITIGATE THEIR
      CLAIMS IN A FAIR AND TIMELY MANNER IN A NEUTRAL
      FORUM …………………………………………………………………16

      A. It is Undisputed that the Verizon Agreement is a Contract of
         Adhesion which is Presented on a "Take it or Leave Basis" to
         Consumers who Lack Equal Bargaining Power………………………...16

      B. The Verizon Scheme at Issue is So Filled with One-Sided,
         Unfair and Unconscionable Provisions that it Frustrates the
         Basic Purpose Behind the FAA of Promoting Arbitration as
         a Fair, Neutral and Speedy Method of Resolving Claims………………17

         1. Verizon's Arbitration Clause Blatantly Threatens Consumers
            with the Extinction of their Arbitration Claims if They Exercise
            their Legal Right to Retain Experienced Attorneys Who Represent
            Other Verizon Customers……………………………………………20

      C. The Verizon Agreement Also Improperly Purports to Strip
         Plaintiffs of their Statutory Rights to Recover Treble Damages,
         Statutory Damages and/or Punitive Damages…………………………..28

i

D. The Provision in the Verizon Agreement Which Bars
   Plaintiffs from Bringing or Proving Any Consumer Claim
   Which Does Arise from the Bare Language of the Verizon
   Agreement Itself Is Also Unconscionable………………………………30

E. The Attempt in Verizon's Clause to Strip Away Plaintiffs'
   Statutory Right to Seek Injunctive Relief Under State Consumer
   Statutes is Also Unconscionable and Contrary to Public Policy………..34

III.   THE UNCONSCIONABLE PROVISIONS IN THE VERIZON
       AGREEMENT SO PERMEATE THE ARBITRATION SCHEME
       THAT THE ENTIRE ARBITRATION CLAUSE SHOULD BE
       STRICKEN……………………………………………………………...37

Conclusion……………………………………………………………………...39

## <u>TABLE OF AUTHORITIES</u>

### CASES

**Page(s)**

<u>Alexander v. Anthony Int'l, L.P.</u>, 341 F.3d 256, 271 (3d Cir. 2003)……………..37

<u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 346 (2011)…………………18

<u>Awuah v. Coverall North America, Inc.</u>, 554 F.3d 7, 12-13 (1st Cir. 2009)…...2, 18

<u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595, 605 (3d Cir. 2002)……………32, 35

<u>Brookdale Senior Living Cmtys., Inc. v. Hardy</u>, No. C15-96 MJP,
2015 U.S. Dist. LEXIS 194282, at *9 (W.D. Wash. June 5, 2015)………………30

<u>Chesapeake Appalachia, LLC v. Scout Petroleum, LLC</u>,
809 F.3d 746, 754 (3d Cir. 2016)……………………………………7, 10, 12, 13

<u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 26 (1991)………………..32

<u>Guidotti v. Legal Helpers Debt Resolution, L.L.C.</u>,
716 F.3d 764, 773 (3d Cir. 2013)……………………………………………18

<u>Jacob v. Norris</u>, 128 N.J. 10, 18-20 (1992)……………………………………..23

<u>Life Care Ctrs. of Am., Inc. v. Estate of Deal</u>, No. 18-CV-187-MV,
2019 U.S. Dist. LEXIS 46729, at *25-26 (D.N.M. Mar. 20, 2019)………………29

<u>Lim v. TForce Logistics, LLC</u>, 8 F.4th 992, 1004–05 (9th Cir. 2021)……………..5

<u>MacClelland v. Cellco P'ship.</u>, ___ F.Supp.3d ___, No. 21-cv-08592-EMC,
2022 U.S. Dist. LEXIS 116895 (N.D. Cal. July 1, 2022)……………………passim

<u>MacDonald v. CashCall, Inc</u>, 883 F.3d 220, 226-227 (3d Cir. 2018)……………14

<u>Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs</u>,
357 F.3d 272, 280-81 (3d Cir. 2004)……………………………………………..6

MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide
Benefit Funds, 974 F.3d 386, 399 (3d Cir. 2020)………………………………14

Narayan v. Ritz-Carlton Dev. Co., 135 Haw. 327, 339 (2015)………………...30

Nino v. Jewelry Exch., Inc., 609 F.3d 191, 200 (3d Cir. 2010)………………..6, 16

Opalinski v. Robert Half Int'l, Inc., 761 F.3d 326, 335 (3d Cir. 2014)………….6, 7

Powertel, Inc. v. Bexley, 743 So.2d 570, 576 (Fla. 4th DCA 1999)……………...29

Preston v. Ferrer, 552 U.S. 346, 357–58 (2008)………………………………18, 26

Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 187 (3d Cir. 2010)………………6

Ragone v. Atl. Video, 595 F.3d 115, 125 (2d Cir. 2010)…………………………30

Richardson v. Coverall N. Am., Inc., 811 F. App'x 100, 103 (3d Cir. 2020)...13, 14

Ritz-Carlton Dev. Co. v. Narayan, 577 U.S. 1056 (2016)………………………...30

Torrance v. Aames Funding Corp., 242 F. Supp. 2d 862, 873 (D. Or. 2002)…….29

Tyco Int'l (U.S.) Ltd. v. Swartz LTD., 422 F.3d 41, 46 (1st Cir. 2005)………….26

**STATUTES**

**Page(s)**

Florida Deceptive and Unfair Trade Practices Act………………………..29, 33, 36

Hawaii Deceptive Practices Act…………………………………………..28, 33, 35

Oregon Unfair Trade Practices Act………………………………………..29, 33, 35

New Mexico False Advertising Act………………………………………………33

New Mexico Unfair Practices Act………………………………………...29, 33, 35

New York General Business Law……………………………………...29, 33, 36

RPC 5.6……………………………………………………………………23

RPC 5.6(b)……………………………………………………………...23

Washington Consumer Protection Act…………………………………..28, 33

## Summary of the Action

As set forth in greater detail in the class complaint, 26 Plaintiffs have filed a proposed class action on behalf of Verizon Wireless customers who are citizens of their home states of New York, Washington, Oregon, New Mexico, Hawaii, and Florida. The gravamen of Plaintiffs' claims is that Verizon engaged in a "bait and switch" scheme in which Verizon's advertising promised them a lower price for wireless services before they signed up and then Verizon imposed an additional and previously undisclosed **"Administrative Charge"** on Plaintiffs' wireless bills. In addition, once the **"Administrative Charge"** appeared on Plaintiffs' bills, Verizon lied calling it a Surcharge to reimburse Verizon the costs for government charges billed to Verizon.

## Summary of Argument

As outlined herein, Verizon has written a clause in the Verizon Agreement[1] that promises Plaintiffs an arbitration, but which actually imposes obstacles that prevent Plaintiffs from even being able to file their arbitration claims for well over a century,[2] while the running statute of limitations extinguishes their claims

---

[1] Because Verizon did not quote the complete text of the arbitration clause at issue, Plaintiffs direct the Court to the Declaration of Stephen DeNittis, Esq. for the relevant portions of the arbitration clause at issue. The full text of this agreement is also attached to that same declaration as Exhibit A thereto. The relevant portions of this agreement are also quoted in the body of this brief as each section is discussed.

[2] A detailed discussion of this aspect of Verizon's unconscionable arbitration clause can be found in Section II(B)(1) herein.

1

decades before they ever get to see an arbitrator. Indeed, the Verizon "arbitration" clause is a completely illusory remedy which undermines the very purposes behind the FAA:  allowing contractual arbitration as a means of fairly and quickly resolving claims in lieu of litigation in court. Such a scheme is the very definition of unconscionability and is therefore unenforceable. See Awuah v. Coverall North America, Inc., 554 F.3d 7, 12-13 (1st Cir. 2009):

> **[I]f the terms for getting an arbitrator to decide the issue are impossibly burdensome, that outcome would indeed raise public policy concerns. <u>If arbitration prevents plaintiffs from vindicating their rights, it is no longer a valid alternative to traditional litigation…if the remedy is truly illusory, a court should not order arbitration at all but decide the entire dispute itself</u>. (emphasis added) (quotation marks omitted**)

Barely six months ago, a federal court in California struck down in its entirety <u>the exact same Verizon arbitration clause</u> which Verizon now seeks to enforce in the case at bar. See DeNittis Decl. Ex. C, <u>MacClelland v. Cellco P'ship.</u>, ___ F.Supp.3d ___, No. 21-cv-08592-EMC, 2022 U.S. Dist. LEXIS 116895 (N.D. Cal. July 1, 2022). In doing so, the <u>MacClelland</u> court held that Verizon had used its power as sole drafter of the clause in question to construct an illusory arbitration scheme by, <u>inter alia</u>, creating a process that required the <u>MacClelland</u> plaintiffs to wait 156 years before they could even file their claims in arbitration, while leaving the statute of limitations running that entire time, thereby procedurally extinguishing such claims decades before any arbitration would actually take

place.[3] See DeNittis Decl. Ex. C, MacClelland, 2022 U.S. Dist. LEXIS 116895, at *37-38:

> **Requiring the consumers who retain counsel willing to represent them in cases such as this to wait months, more likely years before they can even submit a demand for arbitration is "unreasonably favorable" to Verizon. Delaying the ability of one to vindicate a legal claim by years, possibly 156 years, conflict[s] with one of the basic principles of our legal system—justice delayed is justice denied**. Terms that 'contravene the public interest or public policy' are substantively unconscionable. **In addition to the length of delay, the provision is pregnant with the risk that claims will be effectively barred when coupled with the statute of limitations.** The Agreement expressly reserves Verizon's right to raise a statute of limitations defense in arbitration… Under the Mass Arbitration Provision, consumers may not 'file' their claims in arbitration until all preceding traunches are adjudicated. **Those in the queue who are not able to file within the limitations period would be forever barred. The clause contains no tolling provision. The forfeiture of entire legal rights contravenes public policy.** (emphasis added) (citations omitted)

The federal court in MacClelland found that, because severance of the many unconscionable terms in the Verizon arbitration scheme would be impractical, and because Verizon had deliberately crafted the entire arbitration scheme for the improper purpose of favoring itself and depriving consumers of any neutral and fair forum for resolving their claims, the whole Verizon arbitration clause should be struck in its entirety. See DeNittis Decl. Ex. C, MacClelland, ___ F.Supp.3d at

---

[3] As explained in detail in Section II(B)(1) herein, the exact same situation will apply to the 26 Plaintiffs in the case at bar, who will be required to wait over 100 years before they are allowed to even file their arbitration claims under Verizon's scheme, while the running statute of limitations extinguishes their claims decades before they ever get near an arbitrator.

___, 2022 U.S. Dist. LEXIS 116895, at *47-49:

> Here, **there is strong evidence that Verizon was trying to impose an "inferior forum" on its customers**… the mass arbitration provision means that many of Verizon customers will not be able to file a claim in arbitration for years and possibly ever. **It can operate to effectively thwart arbitration and vindication of rights altogether.** In sum, the arbitration clause and the applicable limitations as a whole demonstrate a systematic effort to impose arbitration on a customer as an inferior forum. The Court reaches this conclusion based on the number of unconscionable provisions, their nature, and the overall effect which is entirely foreseeable and intended. **It appears to the Court that the object of the Agreement is to force Verizon consumers into an inferior (and, in many circumstances, wholly ineffective) forum.** (emphasis added) (citation omitted)

Obviously, the federal opinion in MacClelland – which has been approved for publication – is not precedential or binding in the District of New Jersey. It can – and should – be considered as persuasive authority, however. MacClelland is about as close to the case at bar as it is possible to get because it involved a detailed analysis of the ***exact same*** Verizon arbitration clause at issue, the same defendants and the very same federal legal issues as to delegation of arbitrability, unconscionability and severance at issue in the case at bar.

As outlined more fully in the subsequent portions of this brief, the version of the Verizon Agreement at issue[4] on this motion does not contain a true arbitration

---

[4] The Court may find Verizon's motion somewhat confusing because Verizon makes several  s in its brief to a new version of the Verizon Customer Agreement that **is not** the version of the agreement actually at issue on this motion. The October 20, 2021 version of the Verizon Agreement (DeNittis Decl. Ex. A) is the version at issue this motion because that was the version in effect when the case was filed. Indeed, Verizon has expressly stipulated to this fact. See

4

clause at all. Rather, it is a disguised mechanism for destroying consumer claims whenever multiple consumers – like the 26 Plaintiffs in the case at bar – exercise their legal right to choose to be represented by the same set of attorneys. This illusory "arbitration" clause consists of a "daisy chain" of multiple unconscionable provisions which, when added together, amount to a deliberate attempt by Defendants to discourage consumers from bringing claims in the first place, to unfairly extinguish any claims which are brought, and to strip consumers of various statutory rights which they have been granted by law. For the reasons set forth at length herein, this Court should rule that the Verizon arbitration clause at issue is so permeated with unconscionability that the entire clause should be

---

DeNittis Decl. Ex. B, email from Verizon counsel to Plaintiffs' counsel dated July 19, 2022 stating **"In the interests of conversing the parties' resources in future briefing, would you likewise stipulate, as you did in Achey, that the operative arbitration clause in dispute for all your named Plaintiffs and the proposed class in the Corsi case is the version of the Customer Agreement that is dated October 20, 2021"** and the response of Plaintiffs' counsel to that email dated July 19, 2022, which stated **"Yes we will agree to that stipulation".** See also DeNittis Decl. Ex. A, highlight No. 1, which specifically provided **"if we make any changes to the dispute resolution provision of this Agreement, such changes will not affect the resolution of any disputes that arose before such change."** (emphasis added). Thus, the fact that Verizon has now amended the arbitration clause to delete some of the provisions which Plaintiffs contend are unconscionable does not "cure" the deficiencies in the earlier version of the agreement which governs on this motion and this case. See Lim v. TForce Logistics, LLC, 8 F.4th 992, 1004–05 (9th Cir. 2021) **("later willingness to alter the arbitration provision 'does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy.'").** See also DeNittis Decl. Ex. C, MacClelland, ___ F.Supp.3d at ___, 2022 U.S. Dist. LEXIS 116895 at 40 (rejecting Verizon's argument that it could cure the deficiencies in the October 20, 2021 version of the agreement by subsequent amendment, with the federal court stating **"if [Verizon] make[s] any changes to the dispute resolution provision of this Agreement, such changes will not affect the resolution of any disputes that arose before such change."").** The fact that Verizon has now deleted some of the offending clauses only strengthens Plaintiffs' arguments that the October 20, 2021 version which governs this motion is unconscionable (by showing that Verizon agrees with that assessment).

declared void and unenforceable.

## I.   VERIZON HAS NOT COME CLOSE TO MEETING ITS ONEROUS BURDEN OF OVERCOMING THE FEDERAL PREUMPTION IN FAVOR OF THE COURT DECIDING ALL ISSUES OF ABITRABILITY.

While federal policy generally favors enforcement of valid arbitration agreements, federal courts nonetheless still have an important "gate-keeper" role to play when it comes to determining questions of "arbitrability", including deciding questions as to whether the contract is unconscionable and therefore unenforceable. See e.g. Nino v. Jewelry Exch., Inc., 609 F.3d 191, 200 (3d Cir. 2010) (holding that when an arbitration clause is alleged to be unconscionable **"a threshold question of arbitrability is presented for the court to decide"**). As repeatedly held by the Third Circuit, **"[i]t is presumed that courts must decide questions of arbitrability 'unless the parties clearly and unmistakably provide otherwise.'"** Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 280-81 (3d Cir. 2004). That presumption can only be overcome by meeting an onerous burden which the Third Circuit has described thusly: **"The burden of overcoming the presumption is onerous, as it requires express contractual language unambiguously delegating the question of arbitrability to the arbitrator."** Opalinski v. Robert Half Int'l, Inc., 761 F.3d 326, 335 (3d Cir. 2014). See also Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 187 (3d Cir. 2010) (**"We have described the burden on a litigant seeking to prove that the parties**

6

**intended for the arbitrator to decide questions of arbitrability as 'onerous.'"**).

Specifically, the party seeking to overcome the presumption in favor of the court deciding all issues of arbitrability must show there is express language in the contract which "clearly and unmistakably" delegates arbitrability issues to an arbitrator. See Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 753 (3d Cir. 2016):

> **The burden of overcoming the presumption is onerous, as it requires express contractual language unambiguously delegating the question of arbitrability to the arbitrator.**

A party cannot overcome that presumption by pointing to ambiguous language which the defendant contends might be read to delegate arbitrability to an arbitrator. See Opalinski v. Robert Half Int'l, Inc., 761 F.3d 326, 335 (3d Cir. 2014):  **"Silence or ambiguous contractual language is insufficient to rebut the presumption." (citation omitted) (emphasis added)**. Nor can the presumption be overcome by showing that some people might reasonably interpret the contract language as providing for a delegation of arbitrability. See Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 754 (3d Cir. 2016):

> **<u>it is not our role to ascertain whether one, among various competing interpretations of an arbitration agreement, is reasonable under ordinary principles of contractual interpretation</u>, assess whether in hindsight a better arbitration agreement could have been written, or determine whether the arbitrators possess the power to decide other questions of arbitrability. Instead, <u>the Court must determine whether the Leases clearly and unmistakably delegate the specific question of</u>**

**<u>class arbitrability to the arbitrators. We conclude that the Leases do not meet such an onerous burden</u>. (citations omitted) (emphasis added)**

In the case at bar, Verizon has utterly failed to meet its onerous burden of establishing that the federal presumption in favor of this Court deciding all issues of arbitrability has been overcome. Nowhere in the Verizon Agreement itself is there <u>any</u> language – let alone "clear and unmistakable" language – stating that the consumer is trading away the right to have the court decide arbitrability issues and/or that such issues will instead be decided by an arbitrator. <u>See</u> DeNittis Decl. Ex. A, Verizon Agreement.

There is only one portion of the entire Verizon Agreement itself which even <u>mentions</u> the issue of who decides issues involving interpretation of the agreement. That portion of the Verizon Agreement (DeNittis Decl. Ex. A, highlight No. 6 states in relevant part: **"3)… ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR."** These words in the Verizon Agreement clearly <u>do not</u> overcome the presumption against delegation of arbitrability set forth in the aforementioned case precedents. To the contrary, the average consumer reading these words would conclude that the Verizon Agreement is telling them that it is the court – not an arbitrator – who decides issues of interpretation and enforcement of the contract.

8

Verizon erroneously argues that there is language in the Verizon Agreement which Verizon contends "incorporates" the AAA rules of arbitration into the Verizon Agreement; with Verizon further arguing that a specific AAA arbitration rule (one not specifically named anywhere in the Verizon Agreement) contains language delegating all arbitrability issues to the arbitrator. The specific language of the Verizon Agreement which Verizon contends gives rise to this purported "incorporation" of the AAA rules states as follows: **"THE PARTY BRINGING THE CLAIM _CAN CHOOSE EITHER_ THE AAA'S CONSUMER ARBITRATION RULES _OR_ THE BBB'S RULES FOR BINDING ARBITRATION."** (emphasis added). See DeNittis Decl. Ex. A, highlight No. 5.[5]

The defense argues that the above-quoted language in the Verizon Agreement clearly and unmistakably "incorporated" the delegation clause found in one of the unnamed AAA arbitration rules into the Verizon Agreement. That argument is without merit. First, nothing in the Verizon Agreement actually states that any of the various AAA arbitration rules – or any other document extraneous to the contract – is actually being incorporated into and/or made part of the Verizon Agreement. Nor does the Verizon Agreement mention the specific AAA

---

[5] "AAA" stands for American Arbitration Association and "BBB" stands for Better Business Bureau. It is undisputed that Defendants never actually provided consumers with any copy of any of the AAA and BBB arbitration rules or summarized what any of the AAA and BBB rules of arbitration say about who decides arbitrability (or any other topic).

rule which provides for said delegation of arbitrability; let alone say that this specific AAA rule is being incorporated into the Verizon Agreement.[6]

Most importantly, nothing anywhere in the Verizon Agreement even tells consumers "clearly and unmistakably" that they <u>must</u> arbitrate under the AAA rules, or that the AAA rules will definitely apply to the consumer's claim in arbitration. Rather, the plain language of the Verizon Agreement quoted above tells consumers the exact opposite. Verizon's language tells consumers that **they <u>*do not*</u> have to accept arbitration under the AAA rules** and that they may instead choose arbitration under the BBB arbitration rules. Unlike the AAA arbitration rules, it is undisputed that the BBB arbitration rules ***<u>do not</u>*** contain any provision which delegates arbitrability decisions to the arbitrator. <u>See</u> DeNittis Decl. Ex. D, BBB rules of arbitration, which lack any language delegating arbitrability issues to an arbitrator. This conclusion is borne out by the federal court's ruling in <u>MacClelland v. Cellco P'ship.</u>, ___ F.Supp.3d ___, No. 21-cv-08592-EMC, 2022 U.S. Dist. LEXIS 116895, at *13 (N.D. Cal. July 1, 2022) (DeNittis Decl. Ex. C), which correctly held in construing the exact Verizon Agreement at issue in the case at bar that **"The BBB rules do <u>not</u> contain an explicit delegation clause."**

---

[6] In holding that a generalized reference in an arbitration contract to **"the rules of the American Arbitration Association"** was insufficient to overcome the presumption regarding arbitrability, the Third Circuit has noted that there is in fact no one set of AAA rules. <u>See</u> <u>Chesapeake Appalachia</u>, 809 F.3d at 761 (**"the AAA has adopted (and amended) numerous rules over many years. The AAA website identifies more than fifty sets of rules."**).

(emphasis in original).

Thus, the plain language of the arbitration clause in Verizon's own contract tells the consumer that they <u>do not</u> have to arbitrate under the AAA rules, and that they may instead pick arbitration under an entirely different set of arbitration rules which contain no delegation of arbitrability whatsoever. In light of this, Verizon's erroneous argument that the AAA rules are "clearly and unmistakably" incorporated into the Verizon Agreement – and that the AAA rule regarding delegation of arbitrability is likewise incorporated in those AAA rules – collapses like an ill-prepared souffle.[7] If, as the Verizon Agreement plainly tells consumers, the consumer may elect <u>not</u> to proceed under the AAA arbitration rules, then no part of the contract – neither the Verizon Agreement itself nor the applicable arbitration rules – contains any language whatsoever delegating arbitrability decisions to the arbitrator.

This conclusion is echoed by the federal court in <u>MacClelland</u>, which found that <u>the exact same Verizon Agreement at issue in the case at bar</u> did not "clearly and unmistakably" delegate authority to decide arbitrability issues to an arbitrator. <u>See</u> DeNittis Decl. Ex. C, <u>MacClelland</u>, 2022 U.S. Dist. LEXIS 116895, at *12-13:

---

[7] Plaintiffs in the case at bar have never given Verizon any notice of any intent to select arbitration under the AAA rules of arbitration. To the contrary, if Verizon's motion to compel arbitration is granted, Plaintiffs are free to opt for arbitration under the BBB rules – a choice which the plain language of the Verizon Agreement very clearly gives to them – and such BBB rules do not purport anywhere to take arbitrability issues away from the court.

> **the party bringing the claim can choose either the AAA's consumer arbitration rules or the BBB's rules** for binding arbitration. See Agreement at 6. **The BBB rules do not contain an explicit delegation clause. The Court thus finds there is not clear and unmistakable evidence that the parties agreed to arbitrate issues of arbitrability…** (emphasis added) (citations omitted)

Moreover, even if the Verizon Agreement <u>did</u> contain a clear and unmistakable statement which told consumers that it was mandatory that they arbitrate under the AAA rules – a statement which in reality the Verizon Agreement utterly lacks – the Third Circuit has held that such a generalized contractual statement invoking unspecified AAA rules is not enough to overcome the presumption in favor of courts deciding issues of arbitrability. Specifically, in the published and precedential Third Circuit opinion in <u>Chesapeake Appalachia, LLC v. Scout Petroleum, LLC</u>, 809 F.3d 746, 761-63 (3d Cir. 2016), the Third Circuit held that language in the contract mandating that arbitration would occur under **"the rules of the American Arbitration Association"** <u>did not</u> meet the defendant's **"onerous"** burden of proving a **"clear and unmistakable"** delegation of arbitrability via the delegation clause in one of the AAA rules. See <u>Chesapeake Appalachia, LLC v. Scout Petroleum, LLC</u>, 809 F.3d 746, 754 (3d Cir. 2016):

> **Given the actual language of the Leases themselves, the nature and terms of the various AAA rules, and the existing case law, we determine that the District Court was correct when it concluded that the Leases are "far from the 'clear and unmistakable' allowance needed for" the arbitrators to decide the question of class arbitration.**

12

The Verizon Agreement in question is even more ambiguous and much more susceptible to "mistake" than the language found insufficient to overcome the presumption in Chesapeake Appalachia. At least the Chesapeake Appalachian contract contained a mandatory statement telling consumers that they would be required to arbitrate under the AAA rules. The Verizon Agreement has not included any definitive statement telling consumers that application of the AAA rules is even mandatory. To the contrary, the Verizon Agreement tells consumers plainly that they can elect not to have the AAA rules apply and that they may instead choose to proceed under another set of arbitration rules entirely which contain no delegation of arbitrability language at all. A better example of language which fails to meet the onerous "clear and unmistakable" standard set forth in Chesapeake Appalachia is hard to imagine.

Verizon's attempt to rely on Richardson v. Coverall N. Am., Inc., 811 F. App'x 100, 103 (3d Cir. 2020), is sorely misplaced. Even assuming that a non-precedential opinion reported in the Federal Appendix could overrule the published, precedential opinion of the Third Circuit in Chesapeake Appalachian, Richardson offers no help to Verizon. Richardson ruled that an arbitration clause in a contract could incorporate the AAA rules of arbitration by reference, and thereby incorporate the AAA rule delegation of arbitrability into a contract. But the ruling in Richardson was predicated entirely on the Richardson court's finding that the

13

contract at issue actually contained a definitive, mandatory statement telling consumers unequivocally that the AAA arbitration rules <u>would </u>govern any arbitration. <u>See</u> <u>Richardson</u>, 811 F. App'x at 103. The <u>Richardson</u> contract <u>did not</u> give consumers a "multiple choice" problem of the type at issue in the case at bar, where Verizon tells the consumer they can choose <u>not</u> to have the AAA rules apply. Rather, the <u>Richardson</u> contract gave the consumer no choice at all and stated clearly that application of the AAA rules was mandatory. In short, the <u>Richardson</u> court clearly would not have held there was a valid incorporation of the AAA delegation clause under the circumstances that exist in the case at bar. Put simply, a contract which tells consumers expressly that they can chose <u>not to</u> <u>arbitrate under the AAA rules</u> is anathema to the very idea that the contract "clearly and unmistakably" incorporated the AAA rules by reference into the contract.

Finally, even where there is an unambiguous delegation clause, challenges to the delegation clause itself must always be decided by the court. **"[A] delegation provision is itself 'an additional, antecedent [arbitration] agreement.'"** <u>MZM</u> <u>Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds</u>, 974 F.3d 386, 399 (3d Cir. 2020). **"In specifically challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions."** <u>MacDonald v. CashCall, Inc.</u>, 883

F.3d 220, 226-227 (3d Cir. 2018). This includes the fact that the purported

arbitration procedure offered is illusory. Id. at 226-27, where the Third Circuit held

that a plaintiff specifically challenged the delegation clause by alleging:

**"[b]ecause the arbitration procedure described in the agreement is fabricated**

**and illusory, any provision requiring that the enforceability of the arbitration**

**procedure must be decided through arbitration is also illusory and**

**unenforceable."**

As explained in detail in Section II(B)(1) herein, the purported "arbitration"

being offered to Plaintiffs by Verizon is entirely illusory because, inter alia,

Verizon's scheme does not allow Plaintiffs to even file their arbitration claims for

well over a century, while the statute of limitations on these claims continues to

run. See Section II(B)(1) herein. Thus, Plaintiffs' claims will become time-barred

long before any future arbitrator can decide any issues relating to "arbitrability" (or

any other issues). Indeed, if Verizon's erroneous "delegation of arbitrability"

argument is accepted by this Court, the future arbitrator who gets to finally decide

the "arbitrability" issues relating to Plaintiffs' claims will do so sometime in the

22nd Century and that arbitrator has not even been born yet! Thus, it is submitted

that Verizon's proposal to let that future arbitrator decide – more than a hundred

years from now – the "arbitrability" issues in this case is just as illusory as the rest

of Verizon's arbitration scheme.

15

For the foregoing reasons, Verizon has not shown that there was "clear and unmistakable" language in the Verizon Agreement showing that both parties agreed to delegate arbitrability issues to the arbitrator. Therefore, Verizon has not met its onerous burden to overcome the presumption and the Court should decide all arbitrability issues in the case at bar.

## II.   VERIZON'S ARBITRATION CLAUSE IS SO PERMEATED BY UNCONSCIONABLE PROVISIONS THAT IT DEPRIVES CONSUMERS OF ANY OPPORTUNITY TO LITIGATE THEIR CLAIMS IN A FAIR AND TIMELY MANNER IN A NEUTRAL FORUM.

### A.   It is Undisputed that the Verizon Agreement is a Contract of Adhesion which is Presented on a "Take it or Leave Basis" to Consumers who Lack Equal Bargaining Power.

As held by the Third Circuit in Nino v. Jewelry Exch., Inc., 609 F.3d 191, 202 (3d Cir. 2010), a contract which is **presented [to a consumer] on a take-it-or-leave-it basis** where there is a **"disparity in bargaining power between the two parties at the time the contract was signed"** constitutes a contract of adhesion in which **"the arbitration agreement is procedurally unconscionable."**

It is undisputed that the Verizon Agreement manifests both of these elements. Specifically, it is undisputed that each Plaintiff was required to accept the Verizon Agreement in the form drafted by Verizon and posted on the Verizon website, without any opportunity for negotiation, modification or waiver by the consumer. Moreover, the Verizon Agreement itself expressly reserves for Verizon

alone the unilateral right to amend or modify the contract at any time. See Ex. A, Verizon Agreement at page 2. If any Plaintiff disliked such a unilateral amendment to the Agreement by Verizon,[8] the Plaintiff's sole option was to discontinue service. Id.

Nor can there be any contention that there is equal bargaining power between Verizon and the Plaintiffs in the case at bar. Verizon publicly holds itself out to the world as one the leading providers of wireless services with hundreds of millions of customers and annual revenue in the billions of dollars. Plaintiffs are consumers who merely seek to buy wireless services to make their cell phones and laptops work.

Accordingly, the Verizon Customer Agreement is a contract of adhesion which meets the test for procedural unconscionability set forth by the Third Circuit.

   **B.  The Verizon Scheme at Issue is So Filled with One-Sided, Unfair and Unconscionable Provisions that it Frustrates the Basic Purpose Behind the FAA of Promoting Arbitration as a Fair, Neutral and Speedy Method of Resolving Claims.**

Cases interpreting the FAA make clear that arbitration clauses are supposed to provide the consumer with a fair, neutral and speedy alternative forum in which

---

[8] It should be noted that the version of the October 20, 2021 Verizon arbitration clause at issue on this motion was unilaterally imposed on Plaintiffs via exactly this type of unilateral amendment by Verizon.

customers can resolve their claims outside of court. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011) (citing Preston v. Ferrer, 552 U.S. 346, 357–58 (2008) (**"A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and speedy expeditious results."**). See Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 773 (3d Cir. 2013) (**"the FAA places considerable emphasis on 'efficient and speedy dispute resolution.'"**).

A purported arbitration scheme which seeks to make consumers trade away their right to sue in court for a completely illusory opportunity at a neutral, fair and speedy resolution of claims is unconscionable and unenforceable. See Awuah v. Coverall North America, Inc., 554 F.3d 7, 12-13 (1st Cir. 2009):

> **If arbitration prevents plaintiffs from vindicating their rights, it is no longer a valid alternative to traditional litigation…if the remedy is truly illusory, a court should not order arbitration at all but decide the entire dispute itself.** (quotation marks omitted)

As outlined in detail herein, Verizon intentionally designed the arbitration clause at issue to do the exact opposite of providing consumers with a fair, neutral and speedy method of resolving their claims. Rather, Verizon's goal – as correctly found by the federal court in MacClelland – was to create a mechanism for extinguishing consumer claims entirely, in a decades long process, without any fair opportunity of adjudication in any forum by:  1) depriving consumers of their legal right to retain counsel of their own choosing; 2) forcing consumers who insist on

18

retaining counsel of their choice to wait in line for years, decades or more than a century before they are even allowed to file an arbitration claim; 3) failing to toll the statute of limitations on claims as consumers wait in that long line so that the claim is time barred long before consumers' claims can even be filed (let alone heard); and 4) taking away an assortment of other rights guaranteed to consumers by consumer protection statutes and other state law.

Even calling Verizon's clause an "arbitration clause" is a misnomer. Rather, what Verizon has really created is a "claims eating" machine which leaves consumers with no neutral forum for the fair resolution of their claims; let alone a speedy one. It is for this very reason that, on July 1, 2022, a federal district court in MacClelland v. Cellco P'ship., ___ F.Supp.3d ___, No. 21-cv-08592-EMC, 2022 U.S. Dist. LEXIS 116895, at *47-50 (N.D. Cal. July 1, 2022) held that the exact same Verizon arbitration clause at issue in the case at bar had been intentionally designed by Verizon to deprive its customers of any fair and effective forum in which to prosecute their claims in a timely fashion. That same federal court went on to rule that the Verizon arbitration clause contained so many provisions which were unconscionable, one-sided, unfair and violative of public policy that the entire clause had to be declared void and unenforceable. See DeNittis Decl. Ex. C, MacClelland v. Cellco P'ship., ___ F.Supp.3d ___, No. 21-cv-08592-EMC, 2022 U.S. Dist. LEXIS 116895, at *47-50 (N.D. Cal. July 1, 2022):

Here, there is strong evidence that Verizon was trying to impose an "inferior forum" on its customers…**the mass arbitration provision means that many of Verizon customers will not be able to file a claim in arbitration for years and possibly ever**. It can operate to effectively thwart arbitration and vindication of rights altogether. **In sum, the arbitration clause and the applicable limitations as a whole demonstrate a systematic effort to impose arbitration on a customer as an inferior forum.** The Court reaches this conclusion based on the number of unconscionable provisions, their nature, and the overall effect which is entirely foreseeable and intended. **It appears to the Court that the object of the Agreement is to force Verizon consumers into an inferior (and, in many circumstances, wholly ineffective) forum.** (emphasis added) (citation omitted)

1. **Verizon's Arbitration Clause Blatantly Threatens Consumers with the Extinction of their Arbitration Claims if They Exercise their Legal Right to Retain Experienced Attorneys Who Represent Other Verizon Customers.**

By far, the most egregious of the many unconscionable provisions of Verizon's arbitration clause is the so-called "bellwether" mechanism. Despite what Verizon claims, the true purpose of this scheme is to protect Verizon from having arbitration claims filed against it by consumers who have exercised their legal right to retain the same experienced lawyers as other Verizon customers, and to punish such customers with the extinction of their arbitration claims. Specifically, the Verizon Agreement (DeNittis Decl. Ex. A, highlight No. 7):

**If 25 or more customers initiate notices of dispute with Verizon Wireless raising similar claims, and counsel for the Verizon Wireless customers bringing the claims are the same or coordinated for these customers, the claims shall proceed in arbitration in a coordinated proceeding. Counsel for the Verizon Wireless customers and counsel for Verizon Wireless shall each**

20

**select five cases to proceed** first in arbitration in a bellwether proceeding. *The remaining cases shall not be filed in arbitration until the first ten have been resolved.* **If the parties are unable to resolve the remaining cases after the conclusion of the bellwether proceeding, each side may select another five cases to proceed to arbitration for a second bellwether proceeding. This process may continue until the parties are able to resolve all of the claims, either through settlement or arbitration. A court will have authority to enforce this clause and, if necessary, to enjoin the mass filing of arbitration demands against Verizon. (emphasis added)**

The innocuous wording of this provision may make it seem almost benign at first blush. But cutting through the "legalese," this clause sets forth a procedure for barring a consumer from <u>even filing</u> – let alone prosecuting – an arbitration claim if that consumer chooses to be represented by a lawyer who also represents 25 other Verizon customers bringing similar claims (<u>i.e.</u>, a lawyer who is experienced and knowledgeable about the type of claims being brought). <u>See</u> DeNittis Decl. Ex. A, highlight No. 7. If the consumer wants to retain such an experienced attorney – as the 26 Plaintiffs in the case at bar have done – that customer is punished by Verizon by being forced to wait in line for years to file their arbitration claim, while all earlier-filed arbitration claims of the other customers represented by that same lawyer are first adjudicated to a conclusion. The average time for completing each such arbitration is six months or more. <u>See</u> DeNittis Decl. Ex. E, AAA statement indicating that average time for completion of an arbitration is 6.9 months. Thus, depending on how many Verizon customers chose to be represented

21

by the same attorney, the waiting list to file arbitration claims under this procedure can last decades or – as is the case for the 26 Plaintiffs in the case at bar and the plaintiffs in <u>MacClelland</u> – well over a century.

The unfairness of this situation is multiplied several times over by the fact that, under the Verizon clause at issue on this motion, the statute of limitations on such consumer claims <u>is not tolled</u> by the Verizon Agreement while the customers wait years in line to file their claims. To the contrary, Verizon's arbitration clause specifically tells consumers that the statute of limitations is still running on their claims and that Verizon will use it against them when it expires, with the Verizon Agreement stating plainly:  **"THE SAME DEFENSES ARE ALSO AVAILABLE TO BOTH PARTIES AS WOULD BE AVAILABLE IN COURT, INCLUDING ANY APPLICABLE STATUTE OF LIMITATIONS."** (emphasis added). <u>See</u> DeNittis Decl. Ex. A, highlight No. 4.

Thus, depending on how many customers elect to be represented by the same attorney or law firm, the customer must wait years, decades or well over a century simply to file their claim and thus toll the limitations period. The 26 plaintiffs in the case at bar illustrate this point perfectly. These 26 Plaintiffs have elected to be represented by experienced attorneys who also represent over 2,000 other Verizon customers who <u>have already</u> given Verizon written notice that they are challenging the Verizon "Administrative Charge". <u>See</u> DeNittis Decl.,

Paragraph 2. Those 2,000 plus other Verizon customers <u>have already</u> submitted a request for arbitration against Verizon over the same misleading charge being challenged by the 26 Plaintiffs in the case at bar. <u>Id</u>. Thus, under Verizon's onerous claims extinction scheme, merely because the 26 Plaintiffs in the case at bar have elected to be represented by these same experienced attorneys as over 2,000 other Verizon customers, the Plaintiffs in the case at bar would have to wait until every one of those more than 2,000 other arbitration claims reach their conclusion – in batches of ten at a time – before the 26 Plaintiffs in the case at bar are even allowed to file their arbitration claims, with the statute of limitations running that entire time.

This same Verizon "bellwether" scheme also blatantly attempts to force Plaintiffs' chosen counsel to violate RPC 5.6(b), by making them decide which ten of their over 2,000 retained clients will be "lucky" enough to be able to file their claims in arbitration while they are still timely, and which of those clients will be put at the back of that century-long line and have their claims time barred decades before they can even be filed. It should be noted that the true purpose of RPC 5.6 is not to serve lawyers, but rather to serve the strong public policy of always allowing clients the right to be represented by counsel of their own choosing. <u>See</u> <u>e.g.</u> <u>Jacob v. Norris</u>, 128 N.J. 10, 18-20 (1992) (holding as to RPC 5.6 **"The history behind the RPC and its precursors reveals that <u>the RPC's underlying purpose is to</u>**

**ensure the freedom of clients to select counsel of their choice, despite its wording in terms of the lawyer's right to practice… A client is always entitled to be represented by counsel of his own choosing."**) (emphasis added). Thus, the fact that Verizon's scheme seeks to deprive Plaintiffs of their legally-protected choice of lawyer, is yet another reason why it both violates public policy and is unconscionable.[9]

Verizon's argument that the so-called "bellwether" process is similar to the "test case" process commonly utilized in MDL's is wholly without merit. Verizon's procedure is nothing like what occurs when an MDL or other forum employs a "test case" approach where numerous similar claims exist. Most obviously, an MDL involves claims which have already been filed and thus the statute of limitations on all such claims has already been tolled. As outlined above, however, Verizon's "bellwether" process expressly prohibits claimants from even filing their claims in arbitration for years, while leaving the statute of limitations running, thereby extinguishing the claims of those waiting years in line. Put simply, the type of "test case" procedure used in MDL's does not destroy consumers' claims before they can be filed and heard.

---

[9] Tellingly, the Verizon Agreement places no restrictions whatsoever on Verizon's right to be represented by the same lawyers in every arbitration. Thus, the Verizon Agreement allows Verizon's lawyers to become "expert" in the type of claims at issue, while depriving consumers of the ability to hire similarly experienced lawyers. See DeNittis Decl. Ex. C, MacClelland, ___ F.Supp.3d at ___, 2022 U.S. Dist. LEXIS 116895 at *17.

Glaringly, Defendants have argued to Courts in the past "why would Verizon practically not settle these cases after participating in the bellwether process?" The response to this rhetorical question is "because they can and its in their best interest to do so." Defendants ignore the clear language in the bellwether provision which expressly states Verizon is not required to settle but rather continue to force arbitration until all claims are resolved:

> **IF THE PARTIES ARE UNABLE TO RESOLVE THE REMAINING CASES AFTER THE CONCLUSION OF THE BELLWETHER PROCEEDING, EACH SIDE MAY SELECT ANOTHER FIVE CASES TO PROCEED TO ARBITRATION FOR A SECOND BELLWETHER PROCEEDING. THIS PROCESS MAY CONTINUE UNTIL THE PARTIES ARE ABLE TO RESOLVE ALL OF THE CLAIMS, EITHER THROUGH SETTLEMENT OR ARBITRATION.**

DeNittis Decl. Ex. A, highlight No. 7. As a case in point, despite three litigations and over 2,000 claims filed in arbitration not one case has received an offer let alone settled.

In short, Verizon's "bellwether" scheme provides that the 26 Plaintiffs in the case at bar would have to wait well over 100 years – until the claims of more than 2,000 other Verizon customers represented by Plaintiffs' counsel are fully resolved in batches of ten at a time – before the 26 Plaintiffs would even be allowed to file their arbitration claims and stop the statute of limitations from running. Needless to say, barring some medical breakthrough of life extension, all 26 Plaintiffs in the case at bar would be dead long before that could happen. Moreover, even if some

medical miracle does enable all 26 Plaintiffs to survive until the 22nd Century, the statute of limitations on all Plaintiffs' claims would expire decades before the 26 Plaintiffs themselves did.[10]

The federal court in <u>MacClelland v. Cellco P'ship.</u>, ___ F.Supp.3d ___, No. 21-cv-08592-EMC, 2022 U.S. Dist. LEXIS 116895 (N.D. Cal. July 1, 2022), at *33-34 (DeNittis Decl. Ex. C) aptly described the unconscionable effect of the very same Verizon Agreement "bellwether" provision thusly:

> **Plaintiffs' counsel currently represent 2,712 Verizon customers. The provision specifically requires that <u>only ten cases may be arbitrated at one time and that the remaining cases "shall not be filed in arbitration until the first ten have been resolved."</u> Agreement at 7 (emphasis added). According to statistics from the American Arbitration Association showing that <u>the average disposition time for an arbitration takes a little under seven months,</u> Plaintiffs calculate that it would take approximately 156 years to resolve the claims of all of Plaintiffs' counsel's clients. (emphasis added)**

---

[10] Moreover, even if the version of the Verizon Agreement at issue did toll the statute of limitations for those consumers waiting the in decades long line, that <u>would not</u> cure the rampant unconscionability of this scheme. Delaying the ability to arbitrate for an unreasonable length on time is contrary to the principles underlying the FAA. <u>See</u> <u>Tyco Int'l (U.S.) Ltd. v. Swartz LTD.</u>, 422 F.3d 41, 46 (1st Cir. 2005) (**"Even as justice delayed may amount to justice denied, so it is with arbitration."**). As stated by the Supreme Court in <u>Preston v. Ferrer</u>, 552 U.S. 346, 357– 58 (2008): **"A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'"** There is obviously nothing "streamlined" about an arbitration scheme which takes decades (or more than a century) to complete. For this reason, the federal court in <u>MacClelland v. Cellco P'ship.</u>, No. 21-cv-08592-EMC, 2022 U.S. Dist. LEXIS 116895, at *37-39 (N.D. Cal. July 1, 2022) held that the decades-long line created by the exact same Verizon arbitration clause at issue in the case at bar was – by itself – an unconscionable delay, even if the statute of limitations had been tolled for those waiting in that line.

The federal court in <u>MacClelland</u> had no trouble concluding that the combination of two key factors – the lack of any tolling and the inability of customers represented by the same attorney to even file their arbitration claim for years, decades, or more than a century as they waited in line – was both contrary to public policy and highly unconscionable. <u>See</u> DeNittis Decl. Ex. C, <u>MacClelland v. Cellco P'ship.</u>, ___ F.Supp.3d at ___, 2022 U.S. Dist. LEXIS 116895, at *37-39:

> **<u>The Court agrees with Plaintiffs that this provision is substantively unconscionable</u>. Requiring the consumers who retain counsel willing to represent them in cases such as this to wait months, more likely years before they can even submit a demand for arbitration is "unreasonably favorable" to Verizon. <u>Delaying the ability of one to vindicate a legal claim by years, possibly 156 years, "conflict[s] with one of the basic principles of our legal system—justice delayed is justice denied."</u> In addition to the length of delay, the provision is pregnant with <u>the risk that claims will be effectively barred when coupled with the statute of limitations</u>. The Agreement expressly reserves Verizon's right to raise a statute of limitations defense in arbitration...<u>Under the Mass Arbitration Provision, consumers may not "file" their claims in arbitration until all preceding traunches are adjudicated. Those in the queue who are not able to file within the limitations period would be forever barred</u>. The clause contains no tolling provision. <u>The forfeiture of entire legal rights contravenes public policy</u>. (emphasis added) (citations omitted)**

The federal court in <u>MacClelland</u> was plainly correct in its analysis. No matter how much Verizon wants to avoid the prospect of numerous consumers represented by the same attorneys filing individual claims against it, Verizon cannot use its contract of adhesion – and its power to unilaterally amend the Verizon Agreement at will – to turn the Verizon Agreement into an instrument for

27

simply destroying such consumer claims. To force consumers to trade away their right to sue in court for such an illusory "opportunity" at arbitration is directly contrary to the purposes underlying the FAA and is the very archetype of unconscionability.

### C. The Verizon Agreement Also Improperly Purports to Strip Plaintiffs of their Statutory Rights to Recover Treble Damages, Statutory Damages and/or Punitive Damages.

The Verizon Agreement contains a damages limitation provision which includes a waiver of Plaintiffs' right to seek treble damages, statutory damages, and/or punitive damages which states: **"You and Verizon both agree to limit claims against each other solely to direct damages. That means neither of us will claim any damages that are indirect, special, consequential, incidental, treble or punitive."** (emphasis added). See DeNittis Decl. Ex. A, highlight No. 3.

Plaintiffs in the case at bar have sued under the consumer protection statutes of the six states in which they reside. These Plaintiffs have a statutory right to recover more than simply the "direct damages" to which the Verizon arbitration clause purports to limit them. See e.g. Hawaii Deceptive Practices Act, Haw. Rev. Stat. Ann. § 480-13(b) (1993) (**"the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater"**); Washington Consumer Protection Act, RCW 19.86.090 (**"A private plaintiff may be eligible for treble damages . . . Private consumers may**

28

**obtain injunctive relief, even if the injunction would not directly affect the individual's own rights."**); Oregon Unfair Trade Practices Act, ORS § 646.638 (allowing plaintiff to recover the greater of $200 in statutory damages or actual damages, plus punitive damages); New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-10(B) (authorizing a prevailing consumer to recover **up to three times actual damages or $300, whichever is greater."**); New York General Business Law § 350-e (authorizing plaintiff to recover the greater of $500 in statutory damages or actual damages).

The laws of the states at issue provide that an arbitration clause which purports to deprive plaintiffs of such statutory remedies is unconscionable. See e.g. Torrance v. Aames Funding Corp., 242 F. Supp. 2d 862, 873 (D. Or. 2002) (arbitration clause which limited ability to recover statutory damages would be unconscionable); Powertel, Inc. v. Bexley, 743 So.2d 570, 576 (Fla. 4th DCA 1999) (arbitration clause was substantively unconscionable under Florida law, as agreement required customers to give up other statutory remedies by limiting liability to actual damages and clause waived important statutory remedies, including injunctive or declaratory relief under Florida Deceptive and Unfair Trade Practices Act); Life Care Ctrs. of Am., Inc. v. Estate of Deal, No. 18-CV-187-MV, 2019 U.S. Dist. LEXIS 46729, at *25-26 (D.N.M. Mar. 20, 2019) (**"By prohibiting the arbitrator from awarding exemplary or punitive damages,**

**regardless of whether such an award is authorized by law and regardless of whether the evidence produced during the arbitration hearing justifies such an award, the Arbitration Agreement contravenes New Mexico statutory law, and thus is unconscionable.”**); Ragone v. Atl. Video, 595 F.3d 115, 125 (2d Cir. 2010) (holding that **“if certain terms of an arbitration agreement served to act ‘as a prospective waiver of a party’s right to pursue statutory remedies . . . we would have little hesitation in condemning the agreement as against public policy.’”**); Brookdale Senior Living Cmtys., Inc. v. Hardy, No. C15-96 MJP, 2015 U.S. Dist. LEXIS 194282, at *9 (W.D. Wash. June 5, 2015) (Exhibit F hereto hereto) (clause which purported to limit to bar statutory damages and statutory attorneys’ fees held unconscionable under Washington law); Narayan v. Ritz-Carlton Dev. Co., 135 Haw. 327, 339 (2015), reversed and remanded on other grounds by Ritz-Carlton Dev. Co. v. Narayan, 577 U.S. 1056 (2016) (Hawaii Supreme Court held as a matter of Hawaii contract law that **“with respect to adhesion contracts, a contract term that prohibits punitive damages is substantively unconscionable”**).

> **D. <u>The Provision in the Verizon Agreement Which Bars Plaintiffs from Bringing or Proving Any Consumer Claim Which Does Arise from the Bare Language of the Verizon Agreement Itself Is Also Unconscionable.</u>**

The Verizon Agreement contains the following provision: **“This agreement and the documents it incorporates form the entire agreement between us. <u>You</u>**

**can't rely on any other documents, or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement."** (emphasis added). DeNittis Decl. Ex. A, highlight No. 8. This provision does two things which are both unlawful and unconscionable:  1) it purports to limit any and all consumer claims to those arising from the bare language of the Verizon Agreement itself and 2) it prevents consumers from using any evidence in arbitration other than the Verizon Agreement itself.

As outlined in greater detail in the complaint, the claims pleaded in the case at bar arise primarily from facts outside the bare language of the Verizon Agreement itself.[11] Plaintiffs allege that, prior to signing up for Verizon services, Verizon made certain representations in advertisements and otherwise regarding the total cost of wireless services. Then, after the Plaintiffs had already signed up for Verizon wireless services, Verizon began placing an additional **"Administrative Charge"** on their bills which was not mentioned anywhere in the Verizon Agreement or Verizon's advertisements, thereby increasing the prices previously set forth in Verizon's pre-purchase advertising. Plaintiffs allege this additional charge was never revealed to them in any fashion until they first saw the

---

[11] Indeed, the text of the Verizon Agreement itself does not even list either the terms of service or the cost of service. <u>See</u> DeNittis Decl. Ex. A, Verizon Agreement. The customer finds these things out from other sources, such as Verizon's advertisements and Verizon's employees.

charge on their bills.

Yet, according to the Verizon arbitration clause quoted above, a consumer cannot even bring – let alone prove – any arbitration claim against Verizon for any misleading or deceptive statements made by Verizon in any documents, advertisements or bills, or otherwise, unless those deceptive or misleading statements also happen to be memorialized in the bare text of the Verizon Agreement itself. This restriction is clearly nothing short of an unconscionable attempt by Verizon to "prune" away Plaintiffs' statutory rights under the various state consumer protection statutes under which they sue; something which the United States Supreme Court itself has held is improper. See e.g. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (**"by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."**). See also Blair v. Scott Specialty Gases, 283 F.3d 595, 605 (3d Cir. 2002) (**"the Supreme Court has also made clear that arbitration is only appropriate 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum' allowing the statute to serve its purposes."**).

The state consumer protection statutes under which Plaintiffs bring their claims plainly give each Plaintiff the statutory right to sue for deceptive and

misleading sales and advertising practices <u>regardless</u> of whether those Verizon sales and advertising practices happen to be memorialized in the bare text of the Verizon Agreement or not. <u>See</u> <u>e.g.</u> N.Y. Gen. Bus. Law § 350 (which broadly declares unlawful all **"[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."**); Washington Consumer Protection Act, RCW 19.86.020 (which declares unlawful all **"[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."**); Oregon Unfair Trade Practices Act, Or. Rev. Stat. Ann. § 646.608 (**"A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:…(u) Engages in any other unfair or deceptive conduct in trade or commerce."**); New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-3 (declaring unlawful all **"[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce."**); New Mexico False Advertising Act, N.M. Stat. Ann § 57-15-2 (barring advertising **"which is misleading in any material respect"** and covering **"representations made by statement, word, design, device, sound or any combination thereof"**); Hawaii Deceptive Practices Act, HRS §480-2 (declaring broadly that **"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful"**); Florida Deceptive and Unfair

33

Trade Practices Act, Fla. Stat. § 501.204(1) (barring **"[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce"**).

By seeking to bar all consumer claims in arbitration which arise from Verizon advertising and other conduct outside the bare text of the Verizon Agreement itself, Verizon is making an unconscionable attempt to strip away these substantive consumer rights granted to Plaintiffs by these state statutes. This is precisely what the federal court held in <u>MacClelland v. Cellco P'ship.</u>, ___ F.Supp.3d ___, No. 21-cv-08592-EMC, 2022 U.S. Dist. LEXIS 116895, at *32 (N.D. Cal. July 1, 2022) (DeNittis Decl. Ex. C), where the court ruled that the exact same Verizon Agreement clause at issue in the case at bar was unconscionable because it **"purports to exclude all extrinsic evidence without any exceptions, even to claims for which extrinsic or parol evidence may be considered"**. As stated by the federal court in <u>MacClelland</u> at *31-32:

> **The exculpatory claims here thus may function to negate substantive legal rights and remedies of Verizon consumers ...The Court concludes that because the provision does not allow for extrinsic evidence to be considered under any circumstances, including to show fraud, this provision is substantively unconscionable.**

**E.  <u>The Attempt in Verizon's Clause to Strip Away Plaintiffs' Statutory Right to Seek Injunctive Relief Under State Consumer Statutes is Also Unconscionable and Contrary to Public Policy.</u>**

Simply because they are subject to a contract containing an arbitration

34

clause, consumers do not lose the rights they are granted by state or federal consumer protection statutes to act as a private attorney general and seek an injunction to end the unlawful trade practices. Blair v. Rent-A-Center, Inc., 928 F.3d 819, 825-831 (9th Cir. 2019) (holding that the FAA did not preempt the so-called "McGill rule," which holds that any contract term purporting to strip away a citizen's statutory right to seek a public injunction to be unenforceable). See also MacClelland v. Cellco P'ship., ___ F.Supp.3d ___, No. 21-cv-08592-EMC, 2022 U.S. Dist. LEXIS 116895, at *25 (N.D. Cal. July 1, 2022) (DeNittis Decl. Ex. C) (**"a contractual provision purporting to waive the right to seek public injunctive relief in any forum is unenforceable"**).

The Plaintiffs in the case at bar are each proceeding under their home state consumer protection statute. All such statutes expressly authorize Plaintiffs to obtain a general injunction to protect the public by stopping the challenged unlawful practice. See Oregon Unfair Trade Practices Act, ORS 646.636 (authorizing consumer to obtain an injunction **"as may be necessary to ensure cessation of unlawful trade practices."**); New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-10(A) (authorizing consumer to obtain an injunction to permanently enjoin the unlawful practice without needing to show proof of monetary damage, loss of profits, or intent to deceive); Hawaii Deceptive Practices Act, HRS § 480-13(b)(2) (authorizing consumer **"bring proceedings to enjoin the**

35

**unlawful practices, and if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorney's fees together with the cost of suit."**); Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.211(1) (authorizing consumer to obtain injunctive relief); New York General Business Law § 350-e (authorizing plaintiff to obtain an injunction to stop the challenged practice). Under these statutes, Plaintiffs in the case at bar seek to exercise their statutory rights to act as "private attorneys" general and to obtain an injunction to protect the public by stopping the challenged unlawful practice relating to the **"Administrative Charge."**

Yet, the arbitration clause in the Verizon Agreement expressly and flagrantly purports to strip Plaintiffs of these statutory rights. Specifically, the Verizon Agreement states (DeNittis Decl. Ex. A, highlight No. 6): **"[T]he arbitrator may award money or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. <u>No class, representative or private attorney general or general injunctive relief theories may be maintained in any arbitration held under this agreement</u>."** (emphasis added).

In <u>MacClelland</u>, the federal court correctly found that this provision of the exact same Verizon Agreement at issue in the case at bar was unconscionable because it sought to take away the statutory right granted to consumers to act as a

36

private attorney general and to obtain injunctive relief whose scope extends beyond the claimant. See DeNittis Decl. Ex. C, MacClelland v. Cellco P'ship., ___ F.Supp.3d ___, No. 21-cv-08592-EMC, 2022 U.S. Dist. LEXIS 116895, at *21-26 (N.D. Cal. July 1, 2022):

> **a contractual provision purporting to waive the right to seek public injunctive relief in any forum is unenforceable ...By precluding injunctive relief benefitting anyone other than the individual claimant, the contract prevents Plaintiffs from seeking public injunctive relief in any forum, a right which cannot be denied whether in arbitration or otherwise.**

## III. THE UNCONSCIONABLE PROVISIONS IN THE VERIZON AGREEMENT SO PERMEATE THE ARBITRATION SCHEME THAT THE ENTIRE ARBITRATION CLAUSE SHOULD BE STRICKEN.

In cases where one discrete provision of an agreement clause is unconscionable, courts often consider whether to sever that provision. Where multiple, interlocking provisions of an arbitration clause are found to be unconscionable, courts have found that the cumulative effect of such provisions so permeates the entire arbitration clause as to require the court to strike the entire arbitration agreement. In Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 271 (3d Cir. 2003), for example, the Third Circuit held that where multiple unconscionable terms "permeate" the arbitration agreement so thoroughly that they taint its central purpose of promoting a fair alternative means of resolving of disputes, mere severance of the offending terms was not an option, holding:

37

> **These draconian terms unreasonably favor Anthony Crane to the severe disadvantage of plaintiffs and other St. Croix employees. The cumulative effect of so much illegality prevents us from enforcing the arbitration agreement. Because the sickness has infected the trunk, we must cut down the entire tree.**

Similarly, in <u>MacClelland</u>, the federal court held that, taken together, the numerous unconscionable provisions in the exact same Verizon arbitration clause at issue in the case at bar could not be cured merely by severing the offending portions. <u>See</u> DeNittis Decl. Ex. C, <u>MacClelland v. Cellco P'ship.</u>, ___ F.Supp.3d ___, 2022 U.S. Dist. LEXIS 116895 (N.D. Cal. July 1, 2022) at *46:  **"Severance Is Not Appropriate Because the Agreement Is Permeated by Unconscionability"**. The <u>MacClelland</u> court explained that **"Here, there is strong evidence that Verizon was trying to impose an 'inferior forum' on its customers… The Court reaches this conclusion based on the number of unconscionable provisions, their nature, and the overall effect which is entirely foreseeable and intended."** <u>MacClelland</u> at *47-49.

Because of this, the federal court in <u>MacClelland</u> held that merely severing the various individual unconscionable provisions would "reward" Verizon for its decision to intentionally write an arbitration clause that was clearly geared towards depriving consumers of a fair, timely and neutral means of prosecuting their claims. <u>MacClelland</u>, at *49-50:

> **The Court further notes that permitting the Agreement to stand because Verizon proposes to sever any unconscionable provisions**

38

**creates a "perverse incentive." If the Court were to sever the numerous unconscionable provisions in a case such as this, companies could be incentivized to retain unenforceable provisions designed to chill customers' vindication of their rights, then simply propose to sever these provisions in the rare event that they are challenged successfully in court. The remedy of severance, therefore, may indirectly reward systemic unconscionability... The Court concludes that severance of the unconscionable provisions is not appropriate and, therefore, DENIES Verizon's motion to compel arbitration.**

Plaintiffs submit that the federal court in <u>MacClelland</u> was correct. The sheer number and severity of the portions of Verizon's arbitration scheme which are unconscionable mean that mere severance of these offending provisions is not a viable option. The Court should not try to "save" Verizon from its own conscious decision to wholly pervert the arbitration process and turn it into Verizon's weapon for destroying consumer claims. Rather, the unconscionable provisions in the Verizon arbitration clause are so severe and so numerous that they permeate the entire arbitration scheme.[12]

## **Conclusion**

For the foregoing reasons, Verizon's motion to compel arbitration should be denied in its entirety.

---

[12] If the Court disagrees, then this Court should at least strike and sever the mass-arbitration "bellwether" scheme from the Verizon Agreement, which requires the 26 Plaintiffs in the case at bar to wait in line for over 100 years before they are even allowed to file their arbitration claims; as they watch those claims become time-barred long before that long wait ends.

Dated:  January 18, 2023                    Respectfully submitted,

                                BY:

                                DeNITTIS OSEFCHEN PRINCE, P.C.
                                Stephen P. DeNittis, Esq.
                                525 Route 73 North, Suite 410
                                Marlton, NJ 08053
                                Telephone: (856) 797-9951
                                Email: sdenittis@denittislaw.com

                                HATTIS & LUKACS
                                Daniel M. Hattis, Esq.*
                                11711 SE 8th Street, Suite 120
                                Bellevue, WA 98005
                                Telephone: (425) 233-8650
                                Facsimile: (425) 412-7171
                                Email: dan@hattislaw.com
                                Email: pkl@hattislaw.com
                                * Admitted Pro Hac Vice

                                CRIDEN & LOVE, P.A.
                                Michael E. Criden, Esq.**
                                Lindsey C. Grossman, Esq.**
                                7301 SW 57th Court, Suite 515
                                South Miami, FL 33143
                                Telephone: (305) 357-9000
                                Facsimile: (305) 357-9050
                                Email: mcriden@cridenlove.com
                                Email: lgrossman@cridenlove.com
                                ** Pro Hac Vice Application To Be
                                    Submitted

                                *Attorneys for Plaintiffs and the Proposed
                                Classes*