Jeffrey S. Jacobson (NJ ID No. 000772011)
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, New Jersey 07932-1047
Tel.:  (973) 549-7000
Fax:  (973) 360-9831
jeffrey.jacobson@faegredrinker.com

Crystal Nix-Hines (*pro hac vice*)
Shon Morgan (*pro hac vice*)
Marina E. Lev (*pro hac vice*)
Dylan Bonfigli (*pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Tel.:  (213) 443-3000
crystalnixhines@quinnemanuel.com
shonmorgan@quinnemanuel.com
marinalev@quinnemanuel.com
dylanbonfigli@quinnemanuel.com

*Attorneys for Defendants Cellco Partnership
d/b/a Verizon Wireless* and
*Verizon Communications Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CINTIA CORSI. et al.. <br><br> Plaintiffs. <br><br> vs. <br><br> CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, et al., <br><br><br> Defendants. | Case No. 3:22-cv-4621 ZNO <br><br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................2

I.  PLAINTIFFS DO NOT REFUTE THAT THE PARTIES
    DELEGATED QUESTIONS OF ARBITRABILITY ....................................2

II. PLAINTIFFS FAIL TO SHOW THAT THE ARBITRATION
    AGREEMENT IS UNCONSCIONABLE .....................................................6

    A.   The Mass-Arbitration Procedure Is Not Unconscionable ........................6

    B.   The Injunctive-Relief Provision Is Not Unconscionable .....................11

    C.   The Damages Provision Is Not Relevant .............................................12

    D.   The Integration Clause Is Neither Unconscionable Nor Relevant .........13

III. THE COURT CAN SEVER UNENFORCEABLE PROVISIONS ............14

CONCLUSION ....................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Achey v. Verizon,*
 NO. MID-L-0160-22, (N.J. Sup. Jul. 15, 2022) ...................................15

*Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.,*
 180 F.3d 518 (3d Cir. 1999) ...................................................................10

*Buckeye Check Cashing, Inc v. Cardegna,*
 546 U.S. 440 (2006) ........................................................................ 12, 13

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC,*
 809 F.3d 746 (3d Cir. 2016) ...............................................................3, 4

*Dardovitch v. Haltzman,*
 190 F.3d 125 (3d Cir. 1999) ...................................................................10

*Frank Briscoe Co. v. Travelers Indem. Co.,*
 899 F. Supp. 1304 (D.N.J. 1995) ..............................................................6

*Harper v. Ultimo,*
 113 Cal. App. 4th 1402 (2003) ..................................................................5

*Harris v. Green Tree Fin. Corp.,*
 183 F.3d 173 (3d Cir. 1999) ......................................................................6

*Karchnak v. Swatara Twp.,*
 2009 WL 2139280 (M.D. Pa. July 10, 2009) ...........................................5

*Lane v. Francis Capital Mgmt.,*
 224 Cal. App. 4th 676 (2014) ....................................................................5

*McGill v. Citibank, N.A.,*
 2 Cal. 5th 945 (2007)................................................................................12

*MacClelland v. Cellco Partnership*
 2022 WL 2390997 (N.D. Cal. July 1, 2022) ............................... 4, 5, 11

*Murrey v. Superior Ct.,*
 2023 WL 1098156 (2023) ..........................................................................5

*MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds,*
 974 F.3d 386 (3d Cir. 2020) ......................................................................4

*Rent-A-Ctr., W., Inc. v. Jackson,*
 561 U.S. 63 (2010) ................................................................ 2, 12, 13, 14

*Richardson v. Coverall North America, Inc.,*
 811 F. App'x 100 (3d Cir. 2020)................................................... 2, 4, 5

*Robert D. Mabe, Inc. v. OptumRX,*
 43 F.4th 307 (3d Cir. 2022).....................................................................12

*Spinetti v. Serv. Corp. Int'l,*
 324 F.3d 212 (3d Cir. 2003) ....................................................................14

*Viking River Cruises, Inc. v. Moriana,*
 142 S. Ct. 1906 (2022) .............................................................................12

i

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Statutory Authorities**

9 U.S.C. § 3 ................................................................................................15

**Additional Authorities**

*Supplementary Rules for Multiple Case Filings* (Aug. 1, 2021) ..............................9

Hon. Eldon E. Fallon, *Bellwether Trials in Multidistrict Litigation*, 82 Tul.
L. Rev. 2323 (2008)...........................................................................7, 9

J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283 (2022)..........................7

N.M. Stat. Ann. § 57-12-10(A).............................................................................11

New Jersey Rule of Professional Conduct 5.6(b) ..................................................9

## **INTRODUCTION**

Plaintiffs' Opposition adheres to a familiar playbook. While conceding they agreed to Verizon's Customer Agreement (the "Agreement") including an arbitration clause that covers their claims, plaintiffs contend the Agreement is "permeated" with unconscionability and therefore should not be enforced. Opp. 5-6. Plaintiffs' argument contravenes both the Agreement's plain language and Third Circuit precedent that upholds the parties' clear and unmistakable delegation of questions of arbitrability to an arbitrator. Plaintiffs' invocation of a flawed, non-binding ruling from the Northern District of California (applying California law), currently on appeal to the Ninth Circuit, neither overrides these dispositive bases to compel arbitration nor outweighs the recent decision of a New Jersey state court *enforcing* the Agreement in a virtually identical suit brought by plaintiffs' counsel.

As Verizon demonstrated (Mot. 17-20), this Court should not consider plaintiffs' unconscionability challenge to the bellwether process because the parties clearly and unmistakably agreed to arbitrate "any objections with respect to the … validity of the arbitration agreement" (AAA Consumer Arbitration Rules [Dkt. 21-5] at R-14(a)). Plaintiffs' argument that the Agreement does not incorporate the AAA Consumer Arbitration Rules is meritless: The Agreement expressly states in bold, capital letters that "FOR CLAIMS OVER $10,000, THE AAA'S CONSUMER ARBITRATION RULES WILL APPLY" and explains to customers

that they "CAN GET PROCEDURES, RULES AND FEE INFORMATION FROM

THE AAA (WWW.ADR.ORG)."  Dkt. 22-1 at CA-P.6.  Plaintiffs' pleading is also

best read as asserting claims over $10,000 (*see* Mot. 17 & n.5), and plaintiffs do not

argue otherwise.  Further, the Agreement's bellwether process provides a reasonable

procedure to resolve mass arbitrations, mirroring the well-established multi-district

litigation (MDL) bellwether process.  Without plaintiffs' counsel's failure to abide

by the plain language in the Agreement, these proceedings would be under way.

Even if the Court considers plaintiffs' unconscionability challenges to other

provisions of the agreement (it should not), the additional provisions plaintiffs

challenge are not part of the parties' "specific agreement to arbitrate," *Rent-A-Ctr.,*

*W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010), and are thus properly directed to the

arbitrator and irrelevant to this Court's analysis.  Finally, while the mass-arbitration

provision is central to the arbitration agreement, and thus not severable, if the Court

considers the remaining provisions and finds any unenforceable, it can sever them,

as set forth in the Agreement.

## **ARGUMENT**

## I.   **PLAINTIFFS DO NOT REFUTE THAT THE PARTIES DELEGATED QUESTIONS OF ARBITRABILITY**

Consistent with the Third Circuit's ruling in *Richardson v. Coverall North*

*America, Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020), Verizon demonstrated that

plaintiffs clearly and unmistakably agreed to arbitrate questions of arbitrability

because the Agreement expressly incorporates AAA rules. Dkt. 22-1 at CA-P.6. Those rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." Dkt. 21-5 at R-14(a). Plaintiffs' arguments to the contrary contravene Third Circuit precedent.

*First*, plaintiffs err in arguing that the Agreement does not incorporate AAA rules. Opp. at 9. A separate document is incorporated by reference when "[1] the underlying contract makes clear reference to [the] separate document, [2] the identity of the separate document may be ascertained, and [3] incorporation of the document will not result in surprise or hardship.'" *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761 (3d Cir. 2016). These requirements are satisfied: The arbitration agreement makes "clear reference" to the AAA rules by stating that "FOR CLAIMS OVER $10,000, THE AAA'S CONSUMER ARBITRATION RULES WILL APPLY" and explaining to consumers that they "CAN GET PROCEDURES, RULES AND FEE INFORMATION FROM THE AAA (WWW.ADR.ORG)." Dkt. 22-1 at CA-P.6.

Plaintiffs misplace reliance on *Chesapeake Appalachia*. There, the arbitration agreement "refer[ed], without further explanation, to 'the Rules of the [AAA].'" 809 F.3d at 761. But the AAA has adopted "numerous rules over many years," and "[t]he AAA website identifies more than fifty sets of rules." *Id*. The party moving to

3

compel arbitration also argued for "a daisy-chain of cross-references" going from the parties' contract "to 'the rules of the [AAA]' to the Commercial Rules and, at last, to the Supplementary Rules." *Id.*  Given this lack of clarity, the Third Circuit declined to hold that there was incorporation. *Id.* at 762.

Here, however, Verizon does not rely on "a daisy-chain of cross-references" to demonstrate that the Agreement incorporates the AAA rules. *Id.* at 761. The Agreement states that a specific set of AAA rules apply (the AAA Consumer Arbitration Rules) and tells customers where to find them. Dkt. 22-1 at CA-P.6. This is sufficient to incorporate the AAA Consumer Arbitration Rules. Moreover, customers are presumed to have "read, understood, and assented to" such rules, *MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 403 (3d Cir. 2020), including the rule that the arbitrator "shall" rule on the "validity of the arbitration agreement," Dkt. 21-5 at R-14(a).

Plaintiffs erroneously tout a district court ruling from California, *MacClelland v. Cellco Partnership*, to argue that "[w]here at least one party is unsophisticated, … incorporation of the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability." 2022 WL 2390997, at *3 (N.D. Cal. July 1, 2022). But this ruling—currently on appeal—contravenes the law in this Circuit and all other circuits that have considered the issue. Mot. at 18-19 (discussing cases). Indeed, in *Richardson*, the Third Circuit *reversed* a district court ruling that

embraced *MacClelland*'s reasoning.  811 F. App'x at 103-04.  *Richardson* held that an arbitration agreement, which similarly incorporated the AAA rules, "constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability," even if a party is unsophisticated.  *Id.* at 103.  That reasoning applies here.[1]

*Second*, plaintiffs err in arguing that the AAA rules do not apply to their claims.  Opp. 10-11 & n.7.  As Verizon demonstrated (Mot. 17), although the arbitration agreement provides that customers may elect either AAA or BBB rules for "CLAIMS OF $10,000 OR LESS" (Dkt. 22-1 at CA-P.6), the plaintiffs' allegations are best read as asserting "CLAIMS OVER $10,000," particularly given the relief plaintiffs seek: punitive damages, statutory damages, injunctive relief, and attorneys' fees.  Plaintiffs do not dispute and thus tacitly concede that they purported to bring "CLAIMS OVER $10,000."  *See Karchnak v. Swatara Twp.*, 2009 WL 2139280, at *21 (M.D. Pa. July 10, 2009) (party waives an issue if it "merely makes a passing reference to an issue without elaboration").  Thus, the AAA rules apply.[2]

---

[1]   Plaintiffs submitted a notice of supplemental authority (Dkt. 29), that erroneously relies on *Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003) (discussed in *Murrey v. Superior Ct.*, 2023 WL 1098156, at *11 (2023)).  Unlike *Harper*, in which there was no evidence consumers could easily find incorporated rules, the rules incorporated by the Agreement here are easily accessible via a hyperlink. *See Lane v. Francis Capital Mgmt.*, 224 Cal. App. 4th 676, 690 (2014) ("There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties—the AAA rules are available on the Internet.").

[2] Plaintiffs' counsel admits to submitting over 2,000 claims to the AAA (Dkt. 28-1 ¶ 1), further confirming that the AAA rules apply. Plaintiffs falsely claim that "[p]laintiffs in the case at bar have never given Verizon any notice of

*Third*, as a last-ditch argument, plaintiffs cite this provision of the Agreement:

> THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD…. *ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR*.

Dkt. 22-1 at CA-P.6 (emphasis added).  Plaintiffs posit that consumers do not know what a "paragraph" is and will believe the reference to "this paragraph" means a court, not an arbitrator, decides disputes as to the entire arbitration agreement.  But the paragraph says no such thing.  And "[t]he expression of one thing is the exclusion of the other." *Frank Briscoe Co. v. Travelers Indem. Co.*, 899 F. Supp. 1304, 1313 n.8 (D.N.J. 1995).  Thus, the expression that a court decides arbitrability questions about one paragraph shows other arbitrability questions are for the arbitrator.

## II.   PLAINTIFFS FAIL TO SHOW THAT THE ARBITRATION AGREEMENT IS UNCONSCIONABLE

Plaintiffs fail to carry their burden of establishing that the arbitration agreement is procedurally and substantively unconscionable.  *See, e.g.*, *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999).

### A.   The Mass-Arbitration Procedure Is Not Unconscionable

Verizon's consumer-friendly Agreement requires Verizon to pay all

---

any intent to select arbitration under the AAA rules."  Opp. at 11 n.7.  To the contrary, plaintiffs' counsel filed arbitration demands with the AAA on behalf of 12 of the 26 named plaintiffs in this case.  Nix-Hines Dec. ¶ 5.

arbitration fees in most situations, including upfront fees required to initiate arbitrations. Those fees can add up to the millions of dollars when hundreds of consumers simultaneously bring similar claims, and plaintiffs' counsel may attempt to leverage Verizon's obligation to pay those fees to force an early settlement that is divorced from the merits (if any) of plaintiffs' claims. *See* J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283, 1345-49 (2022). Coordinated proceedings reduce this "illegitimate, *in terrorem* settlement pressure." *Id.* at 1350. In many instances, there is no need to adjudicate every filed claim because "bellwether" trials can provide the parties enough information to resolve the dispute globally. As one federal judge recognized, the bellwether process is "one of the most innovative and useful techniques for the resolution of complex cases." Hon. Eldon E. Fallon, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2323 (2008). Verizon's Agreement provides for exactly this kind of process. Plaintiffs' counsel do not like the bellwether provision because it deprives them of the ability to threaten Verizon with a requirement to pay millions of dollars in fees unless it agrees at the outset to the global resolution in plaintiffs' favor. But rather than arguing based on their true aim, plaintiffs' counsel mischaracterize the bellwether provision as depriving plaintiffs of the ability to litigate their claims at all. It does not.

If the same or coordinated counsel bring similar claims on behalf of 25 or more Verizon customers, then Verizon and the claimants' counsel each "select five

cases to proceed first in arbitration in a bellwether proceeding."  If the results of those first ten cases do not yield a global resolution, then "each side may select another five cases to proceed to arbitration for a second bellwether proceeding," and "[t]his process may continue until the parties are able to resolve all of the claims, either through settlement or arbitration."  The arbitration agreement also motivates Verizon to settle by requiring Verizon to pay a claimant $5,000 if the arbitrator awards less than $5,000 and either (1) Verizon offered to settle for less than the award or (2) Verizon made no settlement offer.  Dkt. 22-1 at CA-P.7.

Here, because all cases but the bellwether ones are held outside of arbitration while the coordinated proceeding unfolds, the process defers assessment of fees until each tranche of bellwether cases is arbitrated.  That allows Verizon to defend against claims on the merits. And some of the money saved in arbitral fees can fund a settlement for claimants, if warranted.  The bellwether process thus promotes resolution based on the merits, not based on the threatened amount of aggregated arbitration fees.  Numerous companies have adopted similar procedures as a reasonable response to the threat of the crippling fees that can result from mass arbitrations.  Nix-Hines Dec. Ex. A (AT&T) ¶ 1.3.2.7, Ex. B (Microsoft) ¶ 15(d), Ex. C (Altice) ¶ 24(g).

Plaintiffs err in speculating that they will wait "over 100 years" before their claims are resolved.  Opp. 25.  The parties are likely to settle long before they need

to adjudicate every individual claim.  As a judge experienced in overseeing MDLs noted, "[d]espite criticisms of inefficiency, judicial economy is undoubtedly well-served by MDL consolidation" because "[t]he relevant comparison is not between a massive MDL and an 'average case,' but rather between a massive MDL and the alternative of thousands of similar cases clogging the courts."  Fallon, 82 Tul. L. Rev. at 2330.  The same is true for mass arbitrations.  The alternative to a bellwether approach is not the swift, simultaneous arbitration of all cases, as plaintiffs assume.  That is because the AAA assigns all cases to a small roster of arbitrators, who then adjudicate each claim individually.  *See* AAA, *Supplementary Rules for Multiple Case Filings* 7-8 (Aug. 1, 2021).  As a result, cases are resolved seriatim, just as they would be under the orderly bellwether process.[3]

Plaintiffs also wrongly argue that the statute of limitations is not tolled as to claims that are not yet part of the bellwether process.  Opp. 22.  The Agreement says no such thing, Verizon has never made such an argument, and the duty of good faith and fair dealing would preclude Verizon from arguing that the bellwether provision operates to the detriment of claimants who are not first in line to have their claims arbitrated.  Sensibly read, the Agreement tolls the statute of limitations when a customer provides timely notice of a claim. The Agreement states that, by sending

---

[3]   The bellwether provision does not implicate New Jersey Rule of Professional Conduct 5.6(b), because Verizon has not made or offered any settlement with plaintiffs that places "a restriction on the lawyer's right to practice."

Verizon a notice of dispute, a customer "PRESERVE[S] [THE] RIGHT TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING SUCH DISPUTE." Dkt. 22-1 at CA-P.4.[4]  Additionally, the bellwether provision states that all coordinated claims "shall proceed in arbitration" and that the process continues until "THE PARTIES ARE ABLE TO RESOLVE ALL OF THE CLAIMS, EITHER THROUGH SETTLEMENT OR ARBITRATION." *Id.* at CA-P.7.  By stating that the process continues until "all" claims are resolved, the provision does not envision that claims are procedurally barred merely because they are adjudicated later in the bellwether process.  The Agreement thus unambiguously operates to preserve claims that are timely noticed to Verizon.  But even if the Agreement were ambiguous, "[a]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 522 (3d Cir. 1999).  Moreover, ambiguities are construed against the drafter, supporting a reading of the Agreement that preserves plaintiffs' claims. *Dardovitch v. Haltzman*, 190 F.3d 125, 141 (3d Cir. 1999).

---

[4] To avoid any doubt, Verizon amended its Agreement in August 2022 to make clear that service of a notice of dispute tolls "ALL APPLICABLE STATUTES OF LIMITATIONS … UNTIL THE COMPLETION OF THE [BELLWETHER PROCESS]." Dkt. 22 ¶ 18.  Contrary to plaintiffs' assertions, that clarification in response to plaintiffs' counsel's unreasonable litigation positions does not "strengthen[] Plaintiffs' arguments."  Opp. 5.

### B.    The Injunctive-Relief Provision Is Not Unconscionable

Plaintiffs err in arguing that the Agreement strips a statutory right to seek injunctive relief. Opp. 34-37. The Agreement does ***not*** bar plaintiffs from seeking injunctive relief on their individual claims. The Agreement states that an arbitrator may award injunctive relief "IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF." Dkt. 22-1 at CA-P.6.

The Agreement prohibits "PRIVATE ATTORNEY GENERAL OR GENERAL INJUNCTIVE RELIEF THEORIES." *Id.* But contrary to plaintiffs' assertions, the statutes on which they rely do not give them a right to pursue such theories. For example, the New Mexico statute provides that "[a] person likely to be damaged by an unfair or deceptive trade practice or by an unconscionable trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." N.M. Stat. Ann. § 57-12-10(A). This statute does not authorize private attorney general or general injunctive relief theories, nor do the other statutes plaintiffs cite. *See* Opp. 35-36.

Once again, plaintiffs mistakenly rely on *MacClelland*. That case involved California statutes allowing consumers to seek injunctive relief "for the benefit of the general public as opposed to a particular class of persons." 2022 WL 2390997, at *9. The California Supreme Court held that "a contractual provision purporting to waive the right to seek public injunctive relief in any forum is unenforceable." *Id.*

at *8 (citing *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 952 (2007)); *but see Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1924 (2022) (state law may not preclude agreement to arbitrate claims on individual basis).  Plaintiffs do not identify any such statutory rights here or point to any relevant case holding that a contractual waiver of such rights is unenforceable under any relevant state's law.

### C.    The Damages Provision Is Not Relevant

Plaintiffs' claim the damages provisions in the Agreement (Opp. 28-30) is unconscionable, but that provision it is not part of the parties' specific agreement to arbitrate (*see* Dkt. 22-1 at CA-P.5).  Under the federal severability rule, "the issue of [a] contract's validity is considered by the arbitrator in the first instance" unless "the challenge is to the arbitration clause itself."  *Buckeye Check Cashing, Inc v. Cardegna*, 546 U.S. 440, 445-46 (2006).  "[A] challenge to another provision of the contract … does not prevent a court from enforcing [the] specific agreement to arbitrate." *Rent-A-Ctr.*, 561 U.S. at 70.  "[T]he basis of challenge [must] be directed specifically to the agreement to arbitrate before the court will intervene."  *Id.* at 71.  Thus, "absent a specific challenge to the validity of the arbitration clause specifically, the court must treat [an arbitration agreement] as a valid and enforceable agreement and refer any [other] challenges … to arbitration." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 326 (3d Cir. 2022).

Here, the damages provision challenged by Plaintiffs is clearly outside the

"specific agreement to arbitrate," *Rent-A-Ctr.*, 561 U.S. at 70, which is set apart from the rest of the Agreement and designated with a grey background (Dkt. 22-1 at CA-P.5). *See Buckeye*, 546 U.S. at 445 ("issue of [a] contract's validity is considered by the arbitrator in the first instance" unless "challenge is to the arbitration clause").

### D.    The Integration Clause Is Neither Unconscionable Nor Relevant

Plaintiffs err in challenging the Agreement's integration clause, which provides:  "This agreement and the documents it incorporates form the entire agreement between us.  You can't rely on any other documents or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement."  Dkt. 22-1 at CA-P.8.

First, as with the damages provision, the integration clause is not part of the "specific agreement to arbitrate," *Rent-A-Ctr.*, 561 U.S. at 70, so it is properly considered by the arbitrator, not this Court, *see Buckeye*, 546 U.S. at 445-46. Second, the integration clause is not unconscionable.  Contracts routinely have integration clauses stating that the contract is the parties' entire agreement and supersedes all prior agreements.  That is all the integration clause does here:  It states that the Agreement is the parties' entire agreement and explains that customers "can't rely on any other documents, or on what's said by any Sales or Customer Services Representatives."  Dkt. 22-1 at CA-P.8.

Plaintiffs wrongly argue that the integration clause (1) "purports to limit any

and all consumer claims to those arising from the bare language of the Verizon Agreement itself" and (2) "prevents customers from using any evidence in arbitration other than the Verizon Agreement itself." Opp. 31. First, the, Agreement expressly states that the "Service terms and conditions are part of th[e] Agreement," Dkt. 28-1 at 12, allowing consumers to rely on them. Second, the language stating that "[y]ou can't rely on any other documents …, and you have no other rights regarding Service or this agreement," in context, clearly refers to the subject matter of the previous sentence—which concerns the scope of the Agreement. Plaintiffs' unreasonable reading of the clause runs afoul of the rule that a reasonable interpretation prevails over an unreasonable one. *Arnold M.*, 180 F.3d at 522.

## III. THE COURT CAN SEVER UNENFORCEABLE PROVISIONS

As Verizon explained (Mot. 22), severance is appropriate if a provision is not "an essential part of the agreed exchange." *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 214 (3d Cir. 2003). Here, the preclusion on allowing a mass of identical arbitration claims to be *filed* (triggering fee obligations) before the bellwether trial process has occurred is essential, *id.*, so it is not severable, but the remaining provisions plaintiffs challenge are not essential. As discussed above, the damages provision and integration clause are not part of the "specific agreement to arbitrate." *Rent-A-Ctr.*, 561 U.S. at 70. Thus, an arbitrator must address the enforceability of those two provisions, *id.*, but if this Court decides that either is unenforceable, this

Court can sever either provision.  As Verizon explained (Mot. 23), and plaintiffs did not address, a court in this state adopted that approach by severing the damages provision it deemed unenforceable and then compelling plaintiffs' claims to arbitration.  *Achey v. Verizon*, NO. MID-L-0160-22 (N.J. Sup. Jul. 15, 2022).   In short, plaintiffs have no basis to avoid arbitration of their claims.[5]

## **CONCLUSION**

The Court should grant Verizon's motion and compel plaintiffs to submit their claims, on an individual basis, to binding AAA arbitration.[6]


DATED this 17th day of February, 2023          QUINN EMANUEL URQUHART & SULLIVAN, LLP


By     */s/ Crystal Nix-Hines*

Crystal Nix-Hines
*Attorneys for Defendants VERIZON WIRELESS and VERIZON COMMUNICATIONS, INC.*

---

[5]    Plaintiffs misplace reliance on *MacClelland*'s severability analysis; the presence of one or two unenforceable provisions would not render the arbitration agreement permeated with unconscionability, and the parties expressly agreed that severance is appropriate, Dkt. 22-1 at CA-P.8, which plaintiffs did not address.

[6]   Plaintiffs tacitly concede that, if the Court compels arbitration, it should also stay all further proceedings under 9 U.S.C. § 3.

DATED this 17th day of February, 2023    FAEGRE DRINKER BIDDLE &
REATH LLP


By_____ */s/ Jeffrey S. Jacobsen*_____

Jeffrey S. Jacobsen
*Attorneys for Defendants VERIZON*
*WIRELESS and VERIZON*
*COMMUNICATIONS, INC.*