**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Stephen P. DeNittis, Esq. (SD-0016)**
**Joseph A. Osefchen, Esq.**
**Shane T. Prince, Esq.**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**

**HATTIS & LUKACS**
**Daniel M. Hattis, Esq.\***
**Paul Karl Lukacs, Esq.\***
**11711 SE 8th Street, Suite 120**
**Bellevue, WA 98005**
**(425) 233-8650**

**CRIDEN & LOVE, P.A.**
**Michael E. Criden, Esq.\***
**Lindsey C. Grossman, Esq.\***
**7301 SW 57th Court, Suite 515**
**South Miami, FL 33143**
**(305) 357-9000**

**\* Pro Hac Vice Application**
**To Be Submitted**

**Attorneys for Plaintiffs and the Proposed Classes**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY BOWMAN; ART CAPRI; DEBRA CASEY; KARYN CHALLENDER; TYSON COHRON; CINTIA CORSI; ANDI ELLIS; LAURIE FRANTZ; ASHLEY GARRISON; ANGELA GREEN; CARLOS GUTIERREZ; JAMES HOLLING; KAREN HUDSON; JERRY HUNT; JENNIFER HURTT; JOYCE JONES; LYNN KIRALY; MICHELLE LACUESTA; JASON MCCONVILLE; JOSE NICOT; SANDRA OSHIRO; LESLIE OWENS; JON SANTOS; TERRY SEXTON; RITSUKO TSUNASHIMA-KUKONU; and KATHLEEN WRIGHT; on behalf of themselves and all others similarly situated, | CIVIL ACTION NO. 3:22-cv-04621 **NOTICE OF SUPPLEMENTAL PERSUASIVE AUTHORITY** |
| Plaintiffs, | |
| v. | |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS and VERIZON COMMUNICATIONS INC., | |
| Defendants. | |

1

As additional supplemental persuasive authority, Plaintiffs ask the Court to take notice of the very recent opinion in <u>Individual Claimants v. Cellco Partnership dba Verizon Wireless & Verizon</u>, No. 01-22-0003-9225, American Arbitration Association ("AAA") Order and Opinion dated February 22, 2023 ("AAA Order")(Exhibit A hereto).  After Defendants' Motion to Compel  was fully briefed in this matter, the AAA issued the AAA Order finding, <u>inter</u> <u>alia</u>, that Defendants-Respondents' Mass Arbitration Agreement challenged in this matter **"does not comply with Principle 8"** of AAA's Consumer Due Process Protocol, which requires that ADR proceedings **"should occur within a reasonable time, without undue delay."**  Because Defendants-Respondents' Mass Arbitration Agreement challenged herein does not comply with AAA's protocols, AAA will not arbitrate claims brought pursuant to that agreement – including the claims of the Plaintiffs herein as drafted. It is important to note the AAA Order addresses the *exact* same arbitration clause at issue in this case.

Accordingly, Plaintiffs ask the court to consider the AAA Order as supplemental persuasive authority on the up-coming motion because the Court

should not send to arbitration a matter AAA is not willing to administrate.

Dated:  February 27, 2023                           Respectfully submitted,


BY:  _____

DeNITTIS OSEFCHEN PRINCE, P.C.
Stephen P. DeNittis, Esq.
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Email: sdenittis@denittislaw.com

HATTIS & LUKACS
Daniel M. Hattis, Esq.*
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com
* Admitted Pro Hac Vice

CRIDEN & LOVE, P.A.
Michael E. Criden, Esq.**
Lindsey C. Grossman, Esq.**
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: (305) 357-9000
Facsimile: (305) 357-9050
Email: mcriden@cridenlove.com
Email: lgrossman@cridenlove.com
** Pro Hac Vice Application To Be
    Submitted

*Attorneys for Plaintiffs and the Proposed
Classes*

# Exhibit A



2355 Highway 36 W.
Suite 400
Roseville, MN 55113
Telephone: (612)332-6545
Fax: (612)342-2334

February 23, 2023

Daniel M. Hattis, Esq.
Hattis & Lukacs
400 108th Avenue NE
Suite 500
Bellevue, WA 98004
Via Email to: dan@hattislaw.com

Ann Marie Mortimer, Esq.
Hunton Andrews Kurth LLP
550 South Hope Street
Suite 2000
Los Angeles, CA 90071
Via Email to: amortimer@hunton.com

Case Number: 01-22-0003-9225

Individual Claimants
-vs-
Cellco Partnership d/b/a Verizon Wireless &
Verizon

Dear Parties:

Enclosed please find Arbitrator Meyerson's Order dated February 22, 2023.

A copy of this correspondence has been provided to the arbitrator.

Sincerely,
/s/
Jill Roettger
Manager of ADR Services
Direct Dial: (612)509-2224
Email: jillroettger@adr.org
Fax: (612)342-2334

Supervisor Information: *Victoria Chandler, Director of ADR Services, e:* VictoriaChandler@adr.org


Enclosures

cc:    Sarah E. Lyzak, Esq.
       Stephen DeNittis
       Paul Karl Lukacs, Esq.
       Che Corrington, Esq.
       Samuel A. Danon, Esq.

1

2

**AMERICAN ARBITRATION ASSOCIATION**

3

4   Individual Claimants,                          )        No. 01-22-0003-9225
                                                   )
5              Claimants,                          )
                                                   )        **ORDER**
6   vs.                                            )
                                                   )
7   Cellco Partnership dba Verizon Wireless &      )
    Verizon                                        )
8                                                  )
9              Respondent.                         )
                                                   )
10                                                 )
                                                   )
11  _____       )

12           Two issues are presented in this arbitration:[1]

13

14                 Whether as a Process Arbitrator I have authority to determine if the
                   Verizon Mass Arbitration Agreement complies with the Consumer
15                 Due Process Protocol

16                 Whether the Verizon Mass Arbitration Agreement complies with the
                   Consumer Due Process Protocol

17

18   A hearing was held on these issues on January 26, 2023, at which time both parties

19   presented their argument through their respective counsel: Hattis & Lukacs and

20   DeNittis Osefchen Prince, P.C. for Claimants; and Hunton Andrews Kurth LLP

21   for Respondent Cellco Partnership ("Verizon").    I have considered the oral

22   arguments and the parties' excellent written submissions.

23           This  case  involves  the  interplay  between  the  American  Arbitration

24

25   _____

26   [1]This statement of the issues was agreed to by the parties.

Association (the "Association") Consumer Arbitration Rules (the "Consumer Rules"), the Association's recently adopted Supplementary Rules for Multiple Case Filings (the "Supplementary Rules"), and the Consumer Due Process Protocol Statement of Principles (the "Protocol"). The Protocol, which lists fifteen principles, is the result of deliberations of the Association's National Consumer Disputes Advisory Committee whose purpose was to propose guidelines to enable parties to have a "fundamentally-fair ADR process."

### Background

The Association will administer consumer arbitrations only if they comply with the Protocol. Consumer Rules R-1(d). Cell phone contracts fall within the scope of the Consumer Rules. R-1(a). The Association maintains a Consumer Clause Registry of arbitration agreements which it finds "materially and substantially" comply with the Protocol. The Verizon Mass Arbitration Provision, attached to this Order, was placed on the registry after the Association found it materially and substantially complied with the Protocol. After Verizon registered the Mass Arbitration Provision in 2021, the Association notified Verizon it was prepared to administer arbitrations pursuant to its terms. The determination was described as an "administrative review." In 2022,[2] Verizon submitted a modified version of the Mass Arbitration Provision, and, once again, the Association determined it would administer arbitrations pursuant to that agreement as it again found the Mass Arbitration Provision materially and substantially complied with

---

[2] All dates hereafter occurred in 2022.

2

the Protocol.

In March, Claimants' counsel wrote to the Association questioning whether the Mass Arbitration Provision did, in fact, "substantially and materially" comply with the Protocol. The Association responded on March 25, noting the "concerns" and further explaining that in accordance with the Supplementary Rules, a "Process Arbitrator can be appointed to determine initial administrative issues such as the AAA's administrative determination involving the Due Process Protocols." On June 2, counsel for Claimants filed 2536[3] individual consumer arbitrations against Verizon.   On June 29, the Association, although acknowledging it could administer all of the arbitrations "at this time," explained it was bound to follow the Mass Arbitration Provision "that limits 10 cases to proceed at a time." In response to an email from Claimants' counsel stating his opinion the Mass Arbitration Provision did not comply with the Protocol and requesting appointment of a Process Arbitrator, on November 11 the Association appointed the undersigned in that capacity.

### The Verizon Mass Arbitration Provision

The following are some of the provisions of the Mass Arbitration Provision relevant to the issues in this proceeding:

- It prohibits class or collective arbitrations
- Sixty days' notice must be given to Verizon if a consumer wishes to initiate arbitration
- If 25 or more customers initiate notices of a dispute raising similar claims, the arbitrations shall proceed in a

---

[3] Twenty-eight claims were subsequently withdrawn.

3

"coordinated" fashion
- Counsel for the customers and counsel for Verizon shall each select five cases to proceed in a "bellwether" proceeding; the cases are to be arbitrated individually
- The remaining cases shall not be filed in arbitration until the first ten arbitrations have been concluded
- If the remaining cases are not resolved based on the outcome of the bellwether proceedings, ten more cases will be selected, and so on, until all cases have been submitted for arbitration, ten at a time

**Contentions of the Parties**

Because the determination that the Mass Arbitration Provision complies with the Protocol is described by the Association as an administrative decision, Claimants contend a Process Arbitrator is empowered to revisit that determination and to further rule on the Process Arbitrator's jurisdiction. Claimants also contend the Mass Arbitration Provision does not substantially and materially comply with the Protocol in three respects, but particularly with respect to Principle 8, "Reasonable Time Limits." It provides in part that "ADR proceedings should occur within a reasonable time, without undue delay."

Verizon, not surprisingly, disagrees. It points out that on two occasions the Association found the Mass Arbitration Provision complies with the Protocol, and that determination should not be set aside absent a showing of clear error.[4] The key argument made by Verizon, however, is that the practical consequence of a determination the Mass Arbitration Provision does not comply with the Protocol will be to remove this case from arbitration and into court. This, says Verizon, is a

---

[4] Nothing in the Supplementary Rules suggests a Process Arbitrator is expected to defer to, or rubber stamp, the Association's administrative decisions.

4

decision regarding arbitrability, which cannot be made by a Process Arbitrator and can only be made by a Merits Arbitrator.

**Discussion**

A Process Arbitrator Has Authority to Determine Whether the Mass Arbitration Provision Complies with the Protocol

Although Verizon is correct the Association has twice determined the Mass Arbitration Provision complies with the Protocol, the Association was quite clear in its approval that it was making an administrative determination. For example, the Association's letter to counsel for the parties on June 29 explains the Association's review "is only an administrative determination by the AAA." Once again, in a letter to Verizon on October 13, the Association explained that its "review of the arbitration clause is only an administrative review."

Because Claimants' counsel disagreed with the determination by the Association that the Mass Arbitration Provision complied with the Protocol, that triggered Supplementary Rule MC-6(a). That Rule allows any party to disagree with the Association's initial determination of any administrative issue. In response to the objection from Claimants, the Association appointed the undersigned as the Process Arbitrator whose authority includes "the power to rule on the Process Arbitrator's own jurisdiction and . . . resolve any disputes over the applicability" of Rule MC-6. Supplementary Rule MC-6(f). The Association twice explained the question of whether the Mass Arbitration Provision complies with the Protocol is an administrative issue. Because administrative issues under the Supplementary Rules may be resolved conclusively and finally by a Process

Arbitrator, I conclude I "have the power" to rule on whether the Mass Arbitration Provision complies with the Protocol.

Verizon disagrees that a determination by the Association that its Mass Arbitration Provision does not comply with the Protocol is merely an "administrative" decision.  If it is determined the Mass Arbitration Provision does not comply with the Protocol, "either party may choose to submit its dispute to the appropriate court for resolution."  Consumer Rule R-1(d).  Thus, Verizon explains that such a determination could render the Claimants' disputes not subject to arbitration which Verizon describes as a ruling on arbitrability.  Verizon contends such a determination can only be made by a Merits Arbitrator.[5]    According to Verizon, the question of arbitrability goes to the merits of the Claimants' claims and is not an administrative issue at all.

On this point, Verizon is mistaken—determining whether a dispute is arbitrable is not the same question as determining the merits of the dispute.  That distinction was made clear over 25 years ago in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).  *E.g.*, *ConocoPhillips, Inc. v. Local 13-0555 United Steelworkers Int'l Union*, 741 F.3d 627, 630 (5th Cir. 2014) (citing *First Options* for the principle that determining arbitrability is different than determining the merits of a dispute); *Heights at Issaquah Ridge, Owners Ass'n v.*

---

[5] Verizon is correct that Consumer Rule R-14 provides that an "arbitrator shall have the power to rule on . . . the arbitrability of any claim."  But nothing about that Rule attempts to distinguish between the role of a Merits Arbitrator or Process Arbitrator as described in the Supplementary Rules.  Although a determination that an arbitration agreement does not comply with the Protocol **may** allow the parties to submit their dispute to court, that is a far cry from a "ruling" on the arbitrability of the claim.

6

*Burton Landscape Group, Inc.*, 200 P.3d 254, 255 (Wash. Ct. App. 2009) ("Courts resolve the threshold legal question of arbitrability of the dispute by examining the arbitration agreement without inquiry into the merits of the dispute.").  Because questions of arbitrability are different than questions about the merits of a dispute, Verizon is mistaken in its argument that only a Merits Arbitrator can rule on arbitrability.   Indeed, the role of a Merits Arbitrator is "to determine the merits" of the dispute.  Supplementary Rules MC-7.

With the exception of *Ciccio v. SmileDirectClub*, LLC, 2 F.4th 577 (6th Cir. 2021), discussed below, all of the opinions of which I am aware do not prohibit the Association (and by extension a Process Arbitrator) from making "administrative" decisions that cause the Association to decline administration of an arbitration. For example, in *Hernandez v. MicroBilt Corp.*, 2022 WL 16569272, at *7 (D.N.J. Oct. 25, 2022), citing the Consumer Rules and the Protocol, the court refused to compel arbitration of the class action claims.  The court rejected the defendant's objection to the Association's decision holding the "Defendant . . . agreed to be bound by the processes as set forth under the AAA's rules."

Other courts have reached a similar conclusion. *E.g., Forby v. One Techs., LP*, 2022 WL 2871815, at *11 (N.D.Tex. July 21, 2022) ("[B]ecause the AAA declined to arbitrate her claim, Ms. Forby may now choose to submit her claim before the court. . . . [T]his matter has reached the court under terms to which Defendants agreed to be bound and they cannot . . . complain about enforcement

of the terms . . . "); *Bedgood v. Wyndham Vacation Resorts, Inc.*, 595 F. Supp. 3d 1195, 1202 (M.D.Fl. 2022) (motion to compel arbitration denied where "requesting the Court to compel arbitration would, in effect, bully the AAA to arbitrate an agreement that violates its own Consumer Due Process Rules"); *Eliasieh v. Legally Mine, LLC,* 2020 WL 1929244, at *4 (N.D.Cal. Apr. 21, 2020) (arbitration proceedings were terminated where the defendant did not follow the Association's rules--"procedures laid out by the organization that it itself chose to administer arbitration arising under its arbitration clause").[6]

Verizon takes issue with the foregoing line of cases, relying on *Ciccio v. SmileDirectClub*. There are several important distinctions between that case and this proceeding. First, the Consumer Rules specifically require that administration will only proceed if the Association determines an arbitration agreement complies with the Protocol. In *Ciccio*, because the Association's Healthcare Policy Statement was not part of the Association's arbitration rules, the court observed that an Association employee's decision to make it applicable to the dispute represented only a "policy choice for the parties," *id.* at 586, regarding which the court found impermissible. The court did characterize the Association's actions as making an arbitrability determination which the court found, pursuant to the parties' agreement, could only be made by an arbitrator. To the extent the court was correct in describing the issue as one of arbitrability, an issue the court held

---

[6] The foregoing cases answer a point made on page 12 of Verizon's submission. Because the Mass Arbitration Provision provides disputes will be resolved by the Association, these cases explain administration by the Association includes adherence to the Consumer Rules which include complying with the Protocol as well.

must be decided by an arbitrator, by referring its administrative decision in this case to a Process Arbitrator, the Association has vested the decision, assuming it is a question of arbitrability, with a Process Arbitrator.

For the foregoing reasons I conclude that as the Process Arbitrator, appointed by the Association in accordance with the rules incorporated in the Mass Arbitration Provision,[7] I have the power to determine whether it substantially and materially complies with the Protocol.

The Mass Arbitration Provision Does Not Substantially and Materially Comply with the Due Process Protocol

Claimants contend the Mass Arbitration Provision does not materially and substantially comply with three Principles of the Protocol. Because I agree the Mass Arbitration Provision does not comply with Principle 8 regarding reasonable time limits, it is not necessary to consider the objections Claimants have made to the other principles. Principle 8 states that "ADR proceedings should occur within a reasonable time, without undue delay." The Commentary to Principle 8 emphasizes that a "basic requirement is that rules governing ADR establish and further the basic principle of conflict resolution within a reasonable time." The Commentary further notes that when a "Consumer dispute involves a small

---

[7] The Mass Arbitration Provision provides for arbitration under the rules of the Association or the Better Business Bureau. The parties have agreed to arbitrate under the rules of the Association. Consumer Rule R-1 states that when "parties have provided for the AAA's rules . . .as part of their consumer agreement, they shall be deemed to have agreed . . . the application of the AAA's rules . . . shall be an essential term of their . . . agreement." See Attix v. Carrington Mortg. Servs., LLC, 35 F.4th 1284, 1291 (11th Cir. 2022) (Arbitrations that proceed under the Consumer Arbitration Rules are administered by the AAA . . . .").

1  amount of money and relatively straightforward issues, it is reasonable to assume

2  that an out-of-court resolution . . . should be relatively quick."[8]

3          The importance of timely resolution of consumer disputes has been the

4  subject of much scholarship.  As one noted author wrote:

> Unreasonable time delays can jeopardize the fairness of arbitration. Therefore, fairness may require that measures be put in place to ensure that arbitration is being carried out in an expeditious manner. Time limits or guidelines established by the arbitration provider may help avoid unnecessary delays at each step of the arbitration process. They may also help protect against abuse of the system, wherein a party with greater money and resources might attempt to wear down the other with costly delay.

Thomas J. Stipanowich, *The Arbitration Fairness Index: Using a Public Rating System to Skirt the Legal Logjam and Promote Fairer and More Effective Arbitration of Employment and Consumer Disputes*, 60 U. KAN. L. REV. 985, 1053 (2012); *e.g.*, Carrie Menkel-Meadow, *Ethics Issues in Arbitration and Related Dispute Resolution Processes: What's Happening and What's Not: Appendix A CPR-Georgetown Commission on Ethics and Standards in ADR*, 56 U. MIAMI L. REV. 949, 993-94 (2002) ("[K]ey indicia of fair and impartial processes . . . include . . . reasonable time limits.").

          The Association correctly noted the Mass Arbitration Provision requires that only ten arbitrations may proceed until all demands for arbitration are

---

[8] Ensuring that disputes are resolved timely is a part of the ethical obligation of arbitrators. *See* CODE OF ETHICS FOR ARBITRATORS IN COMMERCIAL DISPUTES Canon 1(F) ("An arbitrator should conduct the arbitration process so as to advance the . . . efficient resolution of the matters submitted for decision.").

resolved.[9]  Is it possible that after the first ten bellwether arbitrations the parties

could negotiate or mediate a resolution to all the remaining claims?  Of course.  To

its credit, Verizon has proposed a number of measures that possibly could expedite

the resolution of claims, including its commitment to mediate the remaining

claims after completion of the bellwether arbitrations.[10]  But relying on the good

faith of the parties to expedite resolution of large numbers of individual consumer

claims, does not make timely resolution of those claims a requirement.  Even

taking at face value each party's good faith and intent to find a timely resolution of

many thousands of claims, Verizon has presented no principle of law that would

allow a court, or arbitrator, to ignore the clear contract language in deference to

promises of cooperation.

     Although no court has answered the precise question of whether the Mass

Arbitration Provision complies with the Protocol, one court has reviewed the Mass

Arbitration Agreement under California contract law.[11]  In *MacClelland v. Cellco

P'ship*, 2022 WL 2390997 (N.D.Cal. July 1, 2022), the court, after finding that the

---

[9] Each party is to select five claims to be heard by different arbitrators.  The ten hearings are to be conducted individually and not consolidated; nothing restricts each party's ability to choose which consumer claims are to be included in the initial bellwether proceeding.

[10] Verizon points to *McGrath v. DoorDash, Inc*, 2020 WL 6526129, at *10 (N.D.Cal. Nov. 5, 2020), as an example of a court which has approved the use of a bellwether process. The court recognized, however, a significant difference not available to consumers of Verizon here--"Most important, after the mediation process, a claimant can choose to opt out of the arbitration process and go back to court . . . ."

[11] Verizon is correct that one other court has reached a different conclusion, rejecting a claim that Verizon's Mass Arbitration Provision was unconscionable.  However, the cryptic ruling of the Middlesex County New Jersey Superior Court makes it difficult to evaluate the court's reasoning.  *Achey v. Cellco P'ship*, No. MID-L-0-160-22 (N.J. Super. Ct. Law Div. July 15, 2022).

Mass Arbitration Provision was a contract of adhesion, went on to consider whether it was substantively unconscionable.[12]   Substantive unconscionability under California law examines the fairness of an adhesion contract's terms.  *OTO, L.L.C. v. Kho*, 447 P.3d 680, 692 (Cal. 2019).  The *MacClelland* court found the Mass Arbitration Provision substantively unconscionable in a number of respects, and, apropos to this case, specifically with regard to the prospect of delay in resolving the several thousand claims brought in that case.  Commenting on the requirement that only ten cases may be heard at one time, the court observed that "[d]elaying the ability of one to vindicate a legal claim by years . . . 'conflict[s] with one of the basic principles of our legal system—justice delayed is justice denied.'" 2022 WL 2390997 at *12 (citation omitted).

Although the court did not address the Consumer Rules, it did discuss the Mass Arbitration Provision's relationship to the Supplementary Rules.  The court held the Mass Arbitration Provision "stands in stark contrast" to the Supplementary Rules which were developed by the Association to "provide parties . . . with an efficient and economical path toward the resolution of multiple individual disputes."  *Id.* at *14.  In describing the salutary purpose of the Supplementary Rules, the court held:

---

[12] I understand the definition of substantive unconscionability is not the same in every state.  Whether the *MacClelland* case is the final word on the issue of unconscionability remains to be seen.  However, the court's comments regarding the anticipated delays in resolving individual claims supports my conclusion that the Mass Arbitration Provision does not meet the test of reasonableness as required by the Protocol.

> The Supplementary Rules do not require that a party wait a set amount of time before initiating a demand for arbitration. Nor do they require that arbitrations proceed in tranches.

*Id.* Although the question of unconscionability is not before me,[13] the court's focus on the delay associated with conducting arbitrations under the Mass Arbitration Provision confirms my opinion that it does not "materially and substantially" comply with Principle 8 of the Protocol. Stated simply, the prospect of many years delay in the resolution of thousands of consumer disputes with Verizon does not meet the test of reasonableness as required by the Protocol. That is so because: (1) a core purpose of the Protocol is to promote the timely resolution of consumer disputes; and (2) as confirmed by the *MacClelland* court,[14] the Mass Arbitration Agreement by its unambiguous language would result in extraordinary delays in the resolution of mass claims brought against Verizon.

### Conclusion

Verizon points out it submitted the Mass Arbitration Provision to the Association relying on the Association's approval before including it in contracts with consumers. If a determination is made the Mass Arbitration Provision does not comply with the Protocol, Verizon claims it will have been misled by its reliance on the initial determinations made by the Association. There are several reasons why that isn't the case. First, in the Association's communications with

---

[13] Although Claimants' objections to the Mass Arbitration Provision certainly sound as if Claimants are complaining it is unconscionable, the only determination made in this Order is that the Mass Arbitration Provision does not comply with Principle 8 of the Protocol. No determination is being made whether the Provision is unconscionable.

[14] The court's analysis of how the Mass Arbitration Provision would be implemented is completely separate from its legal characterization of the Provision as unconscionable.

Verizon it repeatedly pointed out its administrative determination "cannot be relied upon or construed as a legal opinion or advice regarding the enforceability of the arbitration clause."[15]   Second, by providing in the Mass Arbitration Provision for administration by the Association, Verizon agreed to arbitrate under the rules of the Association which include the Consumer Rules, R-1, and the Supplementary Rules, MC-1.   These rules specifically authorize a Process Arbitrator to redetermine any administrative decision made by the Association.

Thus, Verizon should reasonably have expected that the Association's administrative decision regarding whether the Mass Arbitration Provision complies with the Protocol was subject to review in accordance with the Supplementary Rules. However, if my ruling results in the Association declining to administer arbitrations under the Mass Arbitration Provision, disputes that would fall under its terms may wind up in court, and not in arbitration.   Whether Verizon's expectations were reasonable or not, that is undoubtedly not what Verizon intended.

Is there a practical solution at this point?  I think so.  It is not uncommon in a contract of adhesion for the stronger party to reserve the right to modify the contract, and the arbitration provisions in particular.  Indeed, that is what Verizon

---

[15] Moreover, in its December 8, 2021, letter to Verizon, the Association wrote:
> This letter is not a contract, promise and/or agreement to provide any services pursuant to the Verizon consumer arbitration clause and should not be construed as an opinion or assurance of the legal enforceability of the arbitration agreements.  The AAA further reserves the right to decline administration of cases under the Verizon arbitration agreement in the future due to changes in the state of existing law and/or changes in AAA policies, rules and procedures.

has done.  Verizon reserves the right to change the Wireless Customer Agreement, and specifically with respect to the arbitration agreement, it may change those terms except for the resolution of disputes that arose before the change.[16] Presumably, Verizon could amend the Mass Arbitration Provision for existing customers to remove the objection to Principle 8 of the Protocol.  This would enable the Association, consistent with its practice, to administer arbitrations with Verizon.  *See generally* Christopher R. Drahozal & Samantha Zyontz, *Private Regulation of Consumer Arbitration*, 79 TENN. L. REV. 289, 309-10, 332 (2012).

In summary, I have concluded that under the Supplementary Rules I have the authority to determine whether the Mass Arbitration Agreement complies with the Protocol.  I also have concluded it does not comply with Principle 8.  Nothing about this ruling is intended, however, to deprive the Association of its customary practice of asking a registrant to either waive the offending provision or revise it to bring the clause into compliance with the Protocol.

DATED this 22nd day of February, 2023.

_____
Bruce E. Meyerson, Process Arbitrator

---

[16] I express no opinion whether such a solution would apply to the present dispute.

any information (like pictures) that gets lost or deleted if we work on your device. If another wireless carrier is involved in any problem (for example, while you're roaming), you also agree to any limitations of liability that it imposes.

**HOW DO I RESOLVE DISPUTES WITH VERIZON?**
WE HOPE TO MAKE YOU A HAPPY CUSTOMER, BUT IF THERE'S AN ISSUE THAT NEEDS TO BE RESOLVED, THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.

YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT, AS DISCUSSED BELOW. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. WHILE THE PROCEDURES IN ARBITRATION MAY BE DIFFERENT, AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. THE SAME DEFENSES ARE ALSO AVAILABLE TO BOTH PARTIES AS WOULD BE AVAILABLE IN COURT, INCLUDING ANY APPLICABLE STATUTE OF LIMITATIONS. WE ALSO BOTH AGREE THAT:

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT, OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US, OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES, OR FROM OUR EFFORTS TO COLLECT AMOUNTS YOU MAY OWE US FOR SUCH PRODUCTS OR SERVICES, INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU. THIS AGREEMENT TO ARBITRATE CONTINUES TO APPLY EVEN AFTER YOU HAVE STOPPED RECEIVING SERVICE FROM US.

(2) UNLESS YOU AND VERIZON AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACE IN THE COUNTY OF YOUR BILLING ADDRESS. FOR CLAIMS OVER $10,000, THE AAA'S CONSUMER ARBITRATION RULES WILL APPLY. FOR CLAIMS OF $10,000 OR LESS, THE PARTY BRINGING THE CLAIM CAN CHOOSE EITHER THE AAA'S CONSUMER ARBITRATION RULES OR THE BBB'S RULES FOR BINDING ARBITRATION. YOU CAN GET PROCEDURES, RULES AND FEE INFORMATION FROM THE AAA (WWW.ADR.ORG), THE BBB (WWW.BBB.ORG) OR FROM US. FOR CLAIMS OF $10,000 OR LESS, YOU CAN CHOOSE WHETHER YOU'D LIKE THE ARBITRATION CARRIED OUT BASED ONLY ON DOCUMENTS SUBMITTED TO THE ARBITRATOR, OR BY A HEARING IN PERSON OR BY PHONE. ALTERNATIVELY, FOR CLAIMS WITHIN THE JURISDICTIONAL LIMIT OF THE SMALL CLAIMS COURT IN THE STATE ENCOMPASSING YOUR BILLING ADDRESS, EITHER YOU OR VERIZON CAN CHOOSE TO BRING AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT INSTEAD OF PROCEEDING IN ARBITRATION; FURTHERMORE, IF THE CLAIMS IN ANY REQUEST OR DEMAND FOR ARBITRATION COULD HAVE BEEN BROUGHT IN SMALL CLAIMS COURT, THEN EITHER YOU OR VERIZON MAY CHOOSE TO HAVE THE CLAIMS HEARD IN SMALL CLAIMS COURT, RATHER THAN IN ARBITRATION, AT ANY TIME BEFORE THE ARBITRATOR IS APPOINTED, BY NOTIFYING THE OTHER PARTY OF THAT CHOICE IN WRITING. IF THIS PROVISION OR THE LIMITATION ON BRINGING ACTIONS TO SMALL CLAIMS COURT IS FOUND TO BE INVALID, THEN THIS PROVISION SHALL BE SEVERABLE AND THE MATTER WILL PROCEED IN ARBITRATION; IN NO WAY WILL THIS PROVISION ALLOW FOR AN ACTION TO BE BROUGHT ON A CLASS OR COLLECTIVE BASIS.

(3) THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD. NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL OR GENERAL INJUNCTIVE RELIEF THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT. ANY QUESTION REGARDING THE ENFORCEABILITY OR INTERPRETATION OF THIS PARAGRAPH SHALL BE DECIDED BY A COURT AND NOT THE ARBITRATOR.

CA-P.6

(4) IF EITHER OF US INTENDS TO SEEK ARBITRATION UNDER THIS AGREEMENT, THE PARTY SEEKING ARBITRATION MUST FIRST NOTIFY THE OTHER PARTY OF THE DISPUTE IN WRITING AT LEAST 60 DAYS IN ADVANCE OF INITIATING THE ARBITRATION. NOTICE TO VERIZON SHOULD BE SENT TO VERIZON WIRELESS DISPUTE RESOLUTION MANAGER, ONE VERIZON WAY, BASKING RIDGE, NJ 07920. THE NOTICE MUST INCLUDE ENOUGH INFORMATION TO ALLOW US TO IDENTIFY YOUR ACCOUNT AS WELL AS TO ASSESS AND ATTEMPT TO RESOLVE YOUR CLAIM, INCLUDING THE NAME OF THE VERIZON WIRELESS ACCOUNT HOLDER, THE MOBILE TELEPHONE NUMBER AT ISSUE, A DESCRIPTION OF THE CLAIM, THE SPECIFIC FACTS SUPPORTING THE CLAIM, THE DAMAGES YOU CLAIM TO HAVE SUFFERED AND THE RELIEF YOU ARE SEEKING. THE NOTICE REQUIREMENT IS DESIGNED TO ALLOW VERIZON TO MAKE A FAIR, FACT-BASED OFFER OF SETTLEMENT IF IT CHOOSES TO DO SO. YOU CANNOT PROCEED TO ARBITRATION UNLESS YOU PROVIDE THIS INFORMATION. YOU MAY CHOOSE TO BE REPRESENTED BY AN ATTORNEY OR OTHER PERSON AS PART OF THIS PROCESS, BUT IF YOU DO YOU MUST SUBMIT A LETTER OR THE FORM AVAILABLE AT THIS LINK AUTHORIZING US TO DISCUSS YOUR ACCOUNT INFORMATION WITH THIS ATTORNEY OR OTHER PERSON. THE SUFFICIENCY OF THIS NOTICE IS AN ISSUE TO BE DECIDED BY A COURT PRIOR TO THE FILING OF ANY DEMAND FOR ARBITRATION. IF YOU HAVE PROVIDED THIS INFORMATION AND WE ARE UNABLE TO RESOLVE OUR DISPUTE WITHIN 60 DAYS, EITHER PARTY MAY THEN PROCEED TO FILE A CLAIM FOR ARBITRATION. WE'LL REIMBURSE ANY FILING FEE THAT THE AAA OR BBB CHARGES YOU FOR ARBITRATION OF THE DISPUTE AT THE CONCLUSION OF THE ARBITRATION IF YOU FULLY PARTICIPATE IN THE PROCEEDING. WE'LL ALSO PAY ANY ADMINISTRATIVE AND ARBITRATOR FEES CHARGED BY THE ARBITRATION TRIBUNAL. IF THE ARBITRATOR DETERMINES THAT YOUR CLAIM WAS FILED FOR PURPOSES OF HARASSMENT OR IS PATENTLY FRIVOLOUS, THE ARBITRATOR WILL REQUIRE YOU TO REIMBURSE VERIZON FOR ANY FILING, ADMINISTRATIVE OR ARBITRATOR FEES ASSOCIATED WITH THE ARBITRATION.

(5) WE MAY, BUT ARE NOT OBLIGATED TO, MAKE A WRITTEN SETTLEMENT OFFER ANYTIME BEFORE THE ARBITRATION HEARING. THE AMOUNT OR TERMS OF ANY SETTLEMENT OFFER MAY NOT BE DISCLOSED TO THE ARBITRATOR UNTIL AFTER THE ARBITRATOR ISSUES AN AWARD ON THE CLAIM. IF YOU DON'T ACCEPT THE OFFER AND THE ARBITRATOR AWARDS YOU AN AMOUNT OF MONEY THAT'S MORE THAN OUR OFFER BUT LESS THAN $5,000, OR IF WE DON'T MAKE YOU AN OFFER, AND THE ARBITRATOR AWARDS YOU ANY AMOUNT OF MONEY BUT LESS THAN $5,000, THEN WE AGREE TO PAY YOU $5,000 INSTEAD OF THE AMOUNT AWARDED. IN THAT CASE WE ALSO AGREE TO PAY ANY REASONABLE ATTORNEYS' FEES AND EXPENSES, REGARDLESS OF WHETHER THE LAW REQUIRES IT FOR YOUR CASE. IF THE ARBITRATOR AWARDS YOU MORE THAN $5,000, THEN WE WILL PAY YOU ONLY THAT AMOUNT.

(6) IF 25 OR MORE CUSTOMERS INITIATE NOTICES OF DISPUTE WITH VERIZON WIRELESS RAISING SIMILAR CLAIMS, AND COUNSEL FOR THE VERIZON WIRELESS CUSTOMERS BRINGING THE CLAIMS ARE THE SAME OR COORDINATED FOR THESE CUSTOMERS, THE CLAIMS SHALL PROCEED IN ARBITRATION IN A COORDINATED PROCEEDING. COUNSEL FOR THE VERIZON WIRELESS CUSTOMERS AND COUNSEL FOR VERIZON WIRELESS SHALL EACH SELECT FIVE CASES TO PROCEED FIRST IN ARBITRATION IN A BELLWETHER PROCEEDING. THE REMAINING CASES SHALL NOT BE FILED IN ARBITRATION UNTIL THE FIRST TEN HAVE BEEN RESOLVED. IF THE PARTIES ARE UNABLE TO RESOLVE THE REMAINING CASES AFTER THE CONCLUSION OF THE BELLWETHER PROCEEDING, EACH SIDE MAY SELECT ANOTHER FIVE CASES TO PROCEED TO ARBITRATION FOR A SECOND BELLWETHER PROCEEDING. THIS PROCESS MAY CONTINUE UNTIL THE PARTIES ARE ABLE TO RESOLVE ALL OF THE CLAIMS, EITHER THROUGH SETTLEMENT OR ARBITRATION. A COURT WILL HAVE AUTHORITY TO ENFORCE THIS CLAUSE AND, IF NECESSARY, TO ENJOIN THE MASS FILING OF ARBITRATION DEMANDS AGAINST VERIZON.

(7) AN ARBITRATION AWARD AND ANY JUDGMENT CONFIRMING IT APPLY ONLY TO THAT SPECIFIC CASE; IT CAN'T BE USED IN ANY OTHER CASE EXCEPT TO ENFORCE THE AWARD ITSELF.

**(8) IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) CANNOT BE ENFORCED AS TO ALL OR PART OF A DISPUTE, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY TO THAT DISPUTE OR PART OF THE DISPUTE.**

CA-P.7

**(9) IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION, YOU AND VERIZON AGREE THAT THERE WILL NOT BE A JURY TRIAL. YOU AND VERIZON UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY. IN THE EVENT OF LITIGATION, THIS PARAGRAPH MAY BE FILED TO SHOW A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

**About this Agreement**

If either you or we don't enforce our rights under this agreement in one instance, that doesn't mean you or we won't or can't enforce those rights in any other instance. You cannot assign this Agreement or any of your rights or duties under it without our permission. However, we may assign this Agreement or any debt you owe us without notifying you. If you're a Postpay customer, please note that many notices we send to you will show up as messages on your monthly bill. If you have online billing, those notices will be deemed received by you when your online bill is available for viewing. If you get a paper bill, those notices will be deemed received by you three days after we mail the bill to you. If we send other notices to you, they will be considered received immediately if we send them to your wireless device, or to any email or fax number you've given us, or after three days if we mail them to your billing address. If you need to send notices to us, please send them to the customer service address on your latest bill.

If you're a Prepaid customer and we send notices to you, they will be considered received immediately if we send them to your wireless device or to any email you've given us, or if we post them as a precall notification on your Service, or after three days if we mail them to the most current address we have for you. If you need to send notices to us, please send them to the Customer Service Prepaid address at verizon.com/contactus.

If any part of this agreement, including anything regarding the arbitration process (except for the prohibition on class arbitrations as explained in part 8 of the dispute resolution section above), is ruled invalid, that part may be removed from this agreement.

This agreement and the documents it incorporates form the entire agreement between us. You can't rely on any other documents, or on what's said by any Sales or Customer Service Representatives, and you have no other rights regarding Service or this agreement. This Agreement isn't for the benefit of any third party except our parent companies, affiliates, subsidiaries, agents, and predecessors and successors in interest. Except where we've agreed otherwise elsewhere in this agreement, this agreement and any disputes covered by it are governed by federal law and the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement, without regard to the conflicts of laws and rules of that state.

Updated October 20, 2021

CA-P.8